(No. 26495.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. THOMAS HETHERINGTON, Plaintiff in Error.

*Opinion filed January 22, 1942.*

JOHN V. CLINNIN, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and THOMAS J. COURTNEY, State's Attorney, (EDWARD E. WILSON, JOHN T. GALLAGHER, and MELVIN S. REMBE, of counsel,) for the People.

Mr. JUSTICE SHAW delivered the opinion of the court:

Thomas Hetherington, plaintiff in error, Robert Trent, and Michael Battiato were indicted in the criminal court of Cook county for the murder of John A. Meyer. All of the defendants entered pleas of guilty when arraigned by the court. The trial court advised each of the defendants,

in the presence of their counsel, of their rights under the constitution, and further admonished them as to the penalties which the court might inflict upon them. Thereafter the trial judge received in evidence all the circumstances surrounding the crime, together with the previous record of each of the defendants, in compliance with section 4 of division 13 of the Criminal Code (Ill. Rev. Stat. 1941, chap. 38, par. 732) as to the mitigation or aggravation of the offense. Trent and Battiato were each sentenced to serve 14 years in the pentitentiary, and Hetherington was sentenced to serve 199 years. Hetherington alone prosecutes this writ of error.

Hetherington and Trent were released from the House of Correction about December 21, 1940. Prior to their release they were told by other inmates of the institution to get in touch with Battiato upon their release. This contact was made, and, according to plaintiff in error, he was induced by Battiato to commit the crime charged in the indictment. Later, on the evening of January 28, 1941, Trent and plaintiff in error met Battiato and together they selected the Players' Club for their robbery. Access to the club, located on the third floor, could only be gained by means of an elevator. Trent and plaintiff in error went to the club around midnight, had a few drinks, carefully scrutinized the club, and then left to meet with Battiato. Shortly thereafter plaintiff in error and Trent procured two pistols from Battiato's home and returned to the Players' Club about 3:00 A. M. Drawing their guns, they proceeded to rob the patrons of the club, and while this was in progress the elevator buzzer sounded and plaintiff in error forced the elevator operator to accompany him to the main floor of the building in which the club was located. John A. Meyer and his female companion stepped into the elevator and returned to the third floor with plaintiff in error. After Meyer left the elevator, plaintiff in error cov-

ered him with a pistol, told him it was a "stick-up," and
ordered Meyer to join the other patrons on the floor. Meyer
made some resistance, whereupon plaintiff in error fired
one shot into the floor and another into the abdomen of
Meyer. Several days later Meyer died from that gunshot
wound. During the shooting Trent was in the back of the
room and Battiato was not present at the club.

Plaintiff in error insists that the trial court should not
have accepted the qualified plea of guilty. The transcript
of the proceeding upon arraignment disposes of this ob-
jection and is as follows:

The clerk: "Thomas Hetherington, on February 18,
1941, the grand jury indicted you on a charge of murder
of John A. Meyer, what is your plea, guilty or not guilty?"

The defendant: "Guilty."

The court: "Thomas Hetherington, a few moments ago
you were asked to plead and you pled not guilty. The
court wishes to advise you that you have a right to plead
not guilty and to a trial by jury, if you choose, and you
also have a right to plead guilty and submit your case to
a jury for trial, likewise you may plead not guilty and
submit it to the court on a jury waiver.

"Furthermore, the court wishes to warn you that on
your plea of guilty the court may sentence you to death
on a charge of murder. The court likewise may sentence
you to a term of years in the penitentiary for life, or for
a term of years not less than fourteen.

"Do you understand that fully?"

The defendant: "Yes, your Honor."

The court: "Have you conferred with your lawyer?"

The defendant: "Yes, sir."

The court: "He has advised with you?"

The defendant: "Yes, sir."

The court: "He talked with you and you have talked
with your father and mother?"

The defendant: "Yes, sir, and they tell me to plead guilty to murder. I never killed the man in cold blood, but they say I killed him——"

The court: "What is that?"

The defendant: "I am guilty, but I am not guilty of first degree murder. I didn't premeditate killing the man."

Mr. Clinnin: "That is up to the court."

The court: "I cannot accept your plea of guilty under those conditions."

The defendant: "I am guilty."

The court: "You either plead guilty or not guilty, one or the other."

The defendant: "I am guilty."

The court: "You persist in your plea of guilty?"

The defendant: "Yes, your Honor."

A further assignment of error is that the trial court admitted improper evidence of highly prejudicial character against the plaintiff in error in ascertaining the degree of guilt and extenuating circumstances. Plaintiff in error was represented by counsel at the hearing of evidence on the mitigation and aggravation of the offense, and at no time was any objection made to the evidence presented. This court has held on hearings in aggravation and mitigation of an offense, that the trial court is not confined to the evidence showing guilt, but that it may conduct an extensive search within reasonable bounds for other facts which tend to aggravate or mitigate the offense. In such a hearing the court has a right to inquire into the general moral character of the offender, his mentality, his habits, his environment, his age, his domestic relations, and the motives which influence his conduct. (*People* v. *Riley*, 376 Ill. 364, and *People* v. *Popescue*, 345 id. 142.) A review of the entire record convinces us that the trial court remained within the confines of this rule.

Plaintiff in error points to the discrepancy existent between the punishment meted out to the other two defend-

ants and his own punishment, and infers that the sentence for 199 years is invalid. The facts which have been recited here, and other testimony contained in the record, show clearly why the trial court was justified in sentencing plaintiff in error to 199 years, while the other two defendants were given lesser penalties. The validity of the 199-year sentence has been established by this court in a series of cases, more particularly *People* v. *Rucker,* 364 Ill. 371, and *People* v. *Pace,* 362 id. 224.

The trial court did not in any way abuse the discretion granted him under the law, and the judgment of the criminal court of Cook county will, therefore, be affirmed.

*Judgment affirmed.*