# NORTH CAROLINA *v.* ALFORD

No. 14.  Argued November 17, 1969—Reargued October 14, 1970—
Decided November 23, 1970

WHITE, J., delivered the opinion of the Court, in which BURGER, C. J., and HARLAN, STEWART, and BLACKMUN, JJ., joined. BLACK, J., filed a statement concurring in the judgment, *post*, p. 39. BRENNAN, J., filed a dissenting opinion, in which DOUGLAS and MARSHALL, JJ., joined, *post*, p. 39.

*Jacob L. Safron* reargued the cause for appellant. With him on the briefs were *Robert Morgan*, Attorney General of North Carolina, and *Andrew A. Vanore, Jr.*, joined in and adopted by the Attorneys General for their respective States as follows: *Joe Purcell* of Arkansas, *David P. Buckson* of Delaware, *William J. Scott* of Illinois, *John B. Breckinridge* of Kentucky, *Joe T. Patterson* of Mississippi, and *Robert L. Woodahl* of Montana; by the Government of the Virgin Islands; and by the National District Attorneys Association.

*Doris R. Bray,* by appointment of the Court, 394 U. S. 1010, reargued the cause and filed briefs for appellee.

*Jack Greenberg, James M. Nabrit III, Michael Meltsner, Norman C. Amaker, Charles Stephen Ralston, Anthony G. Amsterdam, J. LeVonne Chambers,* and *James E. Ferguson II* filed a brief for Albert Bobby Childs et al. as *amici curiae.*

MR. JUSTICE WHITE delivered the opinion of the Court.

On December 2, 1963, Alford was indicted for first-degree murder, a capital offense under North Carolina

law.[1]  The court appointed an attorney to represent him, and this attorney questioned all but one of the various witnesses who appellee said would substantiate his claim of innocence.  The witnesses, however, did not support Alford's story but gave statements that strongly indicated his guilt.  Faced with strong evidence of guilt and no substantial evidentiary support for the claim of innocence, Alford's attorney recommended that he plead guilty, but left the ultimate decision to Alford himself.  The prosecutor agreed to accept a plea of guilty to a charge of second-degree murder, and on December 10, 1963, Alford pleaded guilty to the reduced charge.

[1] Under North Carolina law, first-degree murder is punished with death unless the jury recommends that the punishment shall be life imprisonment:

"A murder which shall be perpetrated by means of poison, lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary or other felony, shall be deemed to be murder in the first degree and shall be punished with death: Provided, if at the time of rendering its verdict in open court, the jury shall so recommend, the punishment shall be imprisonment for life in the State's prison, and the court shall so instruct the jury. All other kinds of murder shall be deemed murder in the second degree, and shall be punished with imprisonment of not less than two nor more than thirty years in the State's prison." N. C. Gen. Stat. § 14–17 (1969).

At the time Alford pleaded guilty, North Carolina law provided that if a guilty plea to a charge of first-degree murder was accepted by the prosecution and the court, the penalty would be life imprisonment rather than death. The provision permitting guilty pleas in capital cases was repealed in 1969. See *Parker* v. *North Carolina*, 397 U. S. 790, 792–795 (1970). Though under present North Carolina law it is not possible for a defendant to plead guilty to a capital charge, it seemingly remains possible for a person charged with a capital offense to plead guilty to a lesser charge.

Before the plea was finally accepted by the trial court, the court heard the sworn testimony of a police officer who summarized the State's case. Two other witnesses besides Alford were also heard. Although there was no eyewitness to the crime, the testimony indicated that shortly before the killing Alford took his gun from his house, stated his intention to kill the victim, and returned home with the declaration that he had carried out the killing. After the summary presentation of the State's case, Alford took the stand and testified that he had not committed the murder but that he was pleading guilty because he faced the threat of the death penalty if he did not do so.[2] In response to the questions of his counsel, he acknowledged that his counsel had informed him of the difference between second- and first-degree

---

[2] After giving his version of the events of the night of the murder, Alford stated:

"I pleaded guilty on second degree murder because they said there is too much evidence, but I ain't shot no man, but I take the fault for the other man. We never had an argument in our life and I just pleaded guilty because they said if I didn't they would gas me for it, and that is all."

In response to questions from his attorney, Alford affirmed that he had consulted several times with his attorney and with members of his family and had been informed of his rights if he chose to plead not guilty. Alford then reaffirmed his decision to plead guilty to second-degree murder:

"Q [by Alford's attorney]. And you authorized me to tender a plea of guilty to second degree murder before the court?

"A. Yes, sir.

"Q. And in doing that, that you have again affirmed your decision on that point?

"A. Well, I'm still pleading that you all got me to plead guilty. I plead the other way, circumstantial evidence; that the jury will prosecute me on—on the second. You told me to plead guilty, right. I don't—I'm not guilty but I plead guilty."

murder and of his rights in case he chose to go to trial.[3] The trial court then asked appellee if, in light of his denial of guilt, he still desired to plead guilty to second-degree murder and appellee answered, "Yes, sir. I plead guilty on—from the circumstances that he [Alford's attorney] told me." After eliciting information about Alford's prior criminal record, which was a long one,[4] the trial court sentenced him to 30 years' imprisonment, the maximum penalty for second-degree murder.[5]

Alford sought post-conviction relief in the state court. Among the claims raised was the claim that his plea of guilty was invalid because it was the product of fear and coercion. After a hearing, the state court in 1965 found that the plea was "willingly, knowingly, and understandingly" made on the advice of competent counsel and in the face of a strong prosecution case. Subsequently, Alford petitioned for a writ of habeas corpus, first in the United States District Court for the Middle District of North Carolina, and then in the Court of Appeals for the Fourth Circuit. Both courts denied the writ on the basis of the state court's findings that Alford voluntarily

---

[3] At the state court hearing on post-conviction relief, the testimony confirmed that Alford had been fully informed by his attorney as to his rights on a plea of not guilty and as to the consequences of a plea of guilty. Since the record in this case affirmatively indicates that Alford was aware of the consequences of his plea of guilty and of the rights waived by the plea, no issues of substance under *Boykin* v. *Alabama*, 395 U. S. 238 (1969), would be presented even if that case was held applicable to the events here in question.

[4] Before Alford was sentenced, the trial judge asked Alford about prior convictions. Alford answered that, among other things, he had served six years of a ten-year sentence for murder, had been convicted nine times for armed robbery, and had been convicted for transporting stolen goods, forgery, and carrying a concealed weapon. App. 9–11.

[5] See n. 1, *supra*

and knowingly agreed to plead guilty. In 1967, Alford again petitioned for a writ of habeas corpus in the District Court for the Middle District of North Carolina. That court, without an evidentiary hearing, again denied relief on the grounds that the guilty plea was voluntary and waived all defenses and nonjurisdictional defects in any prior stage of the proceedings, and that the findings of the state court in 1965 clearly required rejection of Alford's claim that he was denied effective assistance of counsel prior to pleading guilty. On appeal, a divided panel of the Court of Appeals for the Fourth Circuit reversed on the ground that Alford's guilty plea was made involuntarily. 405 F. 2d 340 (1968). In reaching its conclusion, the Court of Appeals relied heavily on *United States* v. *Jackson,* 390 U. S. 570 (1968), which the court read to require invalidation of the North Carolina statutory framework for the imposition of the death penalty because North Carolina statutes encouraged defendants to waive constitutional rights by the promise of no more than life imprisonment if a guilty plea was offered and accepted. Conceding that *Jackson* did not require the automatic invalidation of pleas of guilty entered under the North Carolina statutes, the Court of Appeals ruled that Alford's guilty plea was involuntary because its principal motivation was fear of the death penalty. By this standard, even if both the judge and the jury had possessed the power to impose the death penalty for first-degree murder or if guilty pleas to capital charges had not been permitted, Alford's plea of guilty to second-degree murder should still have been rejected because impermissibly induced by his desire to eliminate the possibility of a death sentence.[6] We noted

---

[6] Thus if Alford had entered the same plea in the same way in 1969 after the statute authorizing guilty pleas to capital charges had been repealed, see n. 1, *supra,* the result reached by the Court of Appeals should have been the same under that court's reasoning.

probable jurisdiction. 394 U. S. 956 (1969). We vacate the judgment of the Court of Appeals and remand the case for further proceedings.

We held in *Brady* v. *United States*, 397 U. S. 742 (1970), that a plea of guilty which would not have been entered except for the defendant's desire to avoid a possible death penalty and to limit the maximum penalty to life imprisonment or a term of years was not for that reason compelled within the meaning of the Fifth Amendment. *Jackson* established no new test for determining the validity of guilty pleas. The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. See *Boykin* v. *Alabama*, 395 U. S. 238, 242 (1969); *Machibroda* v. *United States*, 368 U. S. 487, 493 (1962); *Kercheval* v. *United States*, 274 U. S. 220, 223 (1927). That he would not have pleaded except for the opportunity to limit the possible penalty does not necessarily demonstrate that the plea of guilty was not the product of a free and rational choice, especially where the defendant was represented by competent counsel whose advice was that the plea would be to the defendant's advantage. The standard fashioned and applied by the Court of Appeals was therefore erroneous and we would, without more, vacate and remand the case for further proceedings with respect to any other claims of Alford which are properly before that court, if it were not for other circumstances appearing in the record which might seem to warrant an affirmance of the Court of Appeals.

As previously recounted, after Alford's plea of guilty was offered and the State's case was placed before the judge, Alford denied that he had committed the murder but reaffirmed his desire to plead guilty to avoid a possible death sentence and to limit the penalty to the 30-year maximum provided for second-degree murder.

Ordinarily, a judgment of conviction resting on a plea of guilty is justified by the defendant's admission that he committed the crime charged against him and his consent that judgment be entered without a trial of any kind. The plea usually subsumes both elements, and justifiably so, even though there is no separate, express admission by the defendant that he committed the particular acts claimed to constitute the crime charged in the indictment. See *Brady* v. *United States, supra,* at 748; *McCarthy* v. *United States,* 394 U. S. 459, 466 (1969). Here Alford entered his plea but accompanied it with the statement that he had not shot the victim.

If Alford's statements were to be credited as sincere assertions of his innocence, there obviously existed a factual and legal dispute between him and the State. Without more, it might be argued that the conviction entered on his guilty plea was invalid, since his assertion of innocence negatived any admission of guilt, which, as we observed last Term in *Brady,* is normally "[c]entral to the plea and the foundation for entering judgment against the defendant . . . ." 397 U. S., at 748.

In addition to Alford's statement, however, the court had heard an account of the events on the night of the murder, including information from Alford's acquaintances that he had departed from his home with his gun stating his intention to kill and that he had later declared that he had carried out his intention. Nor had Alford wavered in his desire to have the trial court determine his guilt without a jury trial. Although denying the charge against him, he nevertheless preferred the dispute between him and the State to be settled by the judge in the context of a guilty plea proceeding rather than by a formal trial. Thereupon, with the State's telling evidence and Alford's denial before it.

the trial court proceeded to convict and sentence Alford for second-degree murder.

State and lower federal courts are divided upon whether a guilty plea can be accepted when it is accompanied by protestations of innocence and hence contains only a waiver of trial but no admission of guilt. Some courts, giving expression to the principle that "[o]ur law only authorizes a conviction where guilt is shown," *Harris* v. *State,* 76 Tex. Cr. R. 126, 131, 172 S. W. 975, 977 (1915), require that trial judges reject such pleas. See, *e. g., Hulsey* v. *United States,* 369 F. 2d 284, 287 (CA5 1966); *United States ex rel. Elksnis* v. *Gilligan,* 256 F. Supp. 244, 255–257 (SDNY 1966); *People* v. *Morrison,* 348 Mich. 88, 81 N. W. 2d 667 (1957); *State* v. *Reali,* 26 N. J. 222, 139 A. 2d 300 (1958); *State* v. *Leyba,* 80 N. M. 190, 193, 453 P. 2d 211, 214 (1969); *State* v. *Stacy,* 43 Wash. 2d 358, 361–364, 261 P. 2d 400, 402–403 (1953). But others have concluded that they should not "force any defense on a defendant in a criminal case," particularly when advancement of the defense might "end in disaster . . . ." *Tremblay* v. *Overholser,* 199 F. Supp. 569, 570 (DC 1961). They have argued that, since "guilt, or the degree of guilt, is at times uncertain and elusive," "[a]n accused, though believing in or entertaining doubts respecting his innocence, might reasonably conclude a jury would be convinced of his guilt and that he would fare better in the sentence by pleading guilty . . . ." *McCoy* v. *United States,* 124 U. S. App. D. C. 177, 179, 363 F. 2d 306, 308 (1966). As one state court observed nearly a century ago, "[r]easons other than the fact that he is guilty may induce a defendant to so plead, . . . [and] [h]e must be permitted to judge for himself in this respect." *State* v. *Kaufman,* 51 Iowa 578, 580, 2 N. W. 275, 276 (1879) (dictum). Accord, *e. g., Griffin* v. *United States,* 132 U. S. App. D. C. 108,

405 F. 2d 1378 (1968); *Bruce* v. *United States,* 126 U. S.
App. D. C. 336, 342–343, 379 F. 2d 113, 119–120 (1967);
*City of Burbank* v. *General Electric Co.,* 329 F. 2d 825,
835 (CA9 1964) (dictum); *State* v. *Martinez,* 89 Idaho
129, 138, 403 P. 2d 597, 602–603 (1965); *People* v. *Hether-
ington,* 379 Ill. 71, 39 N. E. 2d 361 (1942); *State ex rel.
Crossley* v. *Tahash,* 263 Minn. 299, 307–308, 116 N. W.
2d 666, 672 (1962); *Commonwealth* v. *Cottrell,* 433
Pa. 177, 249 A. 2d 294 (1969). Cf. *United States ex rel.
Brown* v. *LaVallee,* 424 F. 2d 457 (CA2 1970).[7]

This Court has not confronted this precise issue, but
prior decisions do yield relevant principles. In *Lynch*
v. *Overholser,* 369 U. S. 705 (1962), Lynch, who had
been charged in the Municipal Court of the District
of Columbia with drawing and negotiating bad checks,
a misdemeanor punishable by a maximum of one year
in jail, sought to enter a plea of guilty, but the trial
judge refused to accept the plea since a psychiatric re-
port in the judge's possession indicated that Lynch
had been suffering from "a manic depressive psychosis,
at the time of the crime charged," and hence might
have been not guilty by reason of insanity. Although
at the subsequent trial Lynch did not rely on the
insanity defense, he was found not guilty by reason
of insanity and committed for an indeterminate period
to a mental institution. On habeas corpus, the Court
ordered his release, construing the congressional legis-
lation seemingly authorizing the commitment as not
reaching a case where the accused preferred a guilty
plea to a plea of insanity. The Court expressly refused
to rule that Lynch had an absolute right to have his

---

[7] A third approach has been to decline to rule definitively that
a trial judge must either accept or reject an otherwise valid plea
containing a protestation of innocence, but to leave that decision to
his sound discretion. See *Maxwell* v. *United States,* 368 F. 2d 735,
738–739 (CA9 1966).

guilty plea accepted, see *id.*, at 719, but implied that there would have been no constitutional error had his plea been accepted even though evidence before the judge indicated that there was a valid defense.

The issue in *Hudson* v. *United States*, 272 U. S. 451 (1926), was whether a federal court has power to impose a prison sentence after accepting a plea of *nolo contendere,* a plea by which a defendant does not expressly admit his guilt, but nonetheless waives his right to a trial and authorizes the court for purposes of the case to treat him as if he were guilty.[8] The Court held

---

[8] Courts have defined the plea of *nolo contendere* in a variety of different ways, describing it, on the one hand, as "in effect, a plea of guilty," *United States* v. *Food & Grocery Bureau,* 43 F. Supp. 974, 979 (SD Cal. 1942), aff'd, 139 F. 2d 973 (CA9 1943), and on the other, as a query directed to the court to determine the defendant's guilt. *State* v. *Hopkins,* 27 Del. 306, 88 A. 473 (1913). See generally *Lott* v. *United States,* 367 U. S. 421, 426–427 (1961), *id.,* at 427–430 (Clark, J., dissenting), 21 Am. Jur. 2d, Criminal Law § 497. As a result, it is impossible to state precisely what a defendant does admit when he enters a *nolo* plea in a way that will consistently fit all the cases.

*Hudson* v. *United States, supra,* was also ambiguous. In one place, the Court called the plea "an admission of guilt for the purposes of the case," *id.,* at 455, but in another, the Court quoted an English authority who had defined the plea as one "where a defendant, in a case not capital, doth not directly own himself guilty . . . ." *Id.,* at 453, quoting 2 W. Hawkins, Pleas of the Crown 466 (8th ed. 1824).

The plea may have originated in the early medieval practice by which defendants wishing to avoid imprisonment would seek to make an end of the matter (*finem facere*) by offering to pay a sum of money to the king. See 2 F. Pollock & F. Maitland, History of English Law 517 (2d ed. 1909). An early 15th-century case indicated that a defendant did not admit his guilt when he sought such a compromise, but merely "that he put himself on the grace of our Lord, the King, and asked that he might be allowed to pay a fine (*petit se admittit per finem*)." *Anon.,* Y. B. Hil. 9 Hen. 6, f. 59, pl. 8 (1431). A 16th-century authority noted that a

that a trial court does have such power, and, except for the cases which were rejected in *Hudson*,[9] the federal courts have uniformly followed this rule, even in cases involving moral turpitude. *Bruce v. United States, supra,* at 343 n. 20, 379 F. 2d, at 120 n. 20 (dictum). See, *e. g., Lott* v. *United States,* 367 U. S. 421 (1961) (fraudulent evasion of income tax); *Sullivan* v. *United States,* 348 U. S. 170 (1954) (*ibid.*); *Farnsworth* v. *Zerbst,* 98 F. 2d 541 (CA5 1938) (espionage); *Pharr* v. *United States,* 48 F. 2d 767 (CA6 1931) (misapplication of bank funds); *United States* v. *Bagliore,* 182 F. Supp. 714 (EDNY 1960) (receiving stolen property). Implicit in the *nolo contendere* cases is a recognition that the Constitution does not bar imposition of a prison sentence upon an accused who is unwilling expressly to admit his guilt but who, faced with grim alternatives, is willing to waive his trial and accept the sentence.

---

defendant who so pleaded "putteth hym selfe in *Gratiam Reginae* without anye more, or by Protestation that hee is not guiltie . . . ," W. Lambard, Eirenarcha 427 (1581), while an 18th-century case distinguished between a *nolo* plea and a jury verdict of guilty, noting that in the former the defendant could introduce evidence of innocence in mitigation of punishment, whereas in the latter such evidence was precluded by the finding of actual guilt. *Queen* v. *Templeman,* 1 Salk. 55, 91 Eng. Rep. 54 (K. B. 1702).

Throughout its history, that is, the plea of *nolo contendere* has been viewed not as an express admission of guilt but as a consent by the defendant that he may be punished as if he were guilty and a prayer for leniency. Fed. Rule Crim. Proc. 11 preserves this distinction in its requirement that a court cannot accept a guilty plea "unless it is satisfied that there is a factual basis for the plea"; there is no similar requirement for pleas of *nolo contendere,* since it was thought desirable to permit defendants to plead *nolo* without making any inquiry into their actual guilt. See Notes of Advisory Committee to Rule 11.

[9] *Blum* v. *United States,* 196 F. 269 (CA7 1912); *Shapiro* v. *United States,* 196 F. 268 (CA7 1912); *Tucker* v. *United States,* 196 F. 260 (CA7 1912).

These cases would be directly in point if Alford had simply insisted on his plea but refused to admit the crime. The fact that his plea was denominated a plea of guilty rather than a plea of *nolo contendere* is of no constitutional significance with respect to the issue now before us, for the Constitution is concerned with the practical consequences, not the formal categorizations, of state law. See *Smith* v. *Bennett*, 365 U. S. 708, 712 (1961); *Jones* v. *United States*, 362 U. S. 257, 266 (1960). Cf. *Kermarec* v. *Compagnie Generale Transatlantique*, 358 U. S. 625, 630–632 (1959). Thus, while most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.

Nor can we perceive any material difference between a plea that refuses to admit commission of the criminal act and a plea containing a protestation of innocence when, as in the instant case, a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt. Here the State had a strong case of first-degree murder against Alford. Whether he realized or disbelieved his guilt, he insisted on his plea because in his view he had absolutely nothing to gain by a trial and much to gain by pleading. Because of the overwhelming evidence against him, a trial was precisely what neither Alford nor his attorney desired. Confronted with the choice between a trial for first-degree murder, on the one hand, and a plea of guilty to second-degree murder, on the other, Alford quite reasonably chose the latter and thereby limited the maximum penalty to a 30-year term. When his plea is viewed in light

of the evidence against him, which substantially negated his claim of innocence and which further provided a means by which the judge could test whether the plea was being intelligently entered, see *McCarthy* v. *United States, supra,* at 466–467 (1969),[10] its validity cannot be seriously questioned. In view of the strong factual basis for the plea demonstrated by the State and Alford's clearly expressed desire to enter it despite his professed belief in his innocence, we hold that the trial judge did not commit constitutional error in accepting it.[11]

Relying on *United States* v. *Jackson, supra,* Alford now argues in effect that the State should not have allowed

---

[10] Because of the importance of protecting the innocent and of insuring that guilty pleas are a product of free and intelligent choice, various state and federal court decisions properly caution that pleas coupled with claims of innocence should not be accepted unless there is a factual basis for the plea, see, *e. g., Griffin* v. *United States,* 132 U. S. App. D. C. 108, 110, 405 F. 2d 1378, 1380 (1968); *Bruce* v. *United States, supra,* at 342, 379 F. 2d, at 119 (1967); *Commonwealth* v. *Cottrell,* 433 Pa. 177, 249 A. 2d 294 (1969); and until the judge taking the plea has inquired into and sought to resolve the conflict between the waiver of trial and the claim of innocence. See, *e. g., People* v. *Serrano,* 15 N. Y. 2d 304, 308–309, 206 N. E. 2d 330, 332 (1965); *State* v. *Branner,* 149 N. C. 559, 563, 63 S. E. 169, 171 (1908). See also *Kreuter* v. *United States,* 201 F. 2d 33, 36 (CA10 1952).

In the federal courts, Fed. Rule Crim. Proc. 11 expressly provides that a court "shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

[11] Our holding does not mean that a trial judge must accept every constitutionally valid guilty plea merely because a defendant wishes so to plead. A criminal defendant does not have an absolute right under the Constitution to have his guilty plea accepted by the court, see *Lynch* v. *Overholser,* 369 U. S., at 719 (by implication), although the States may by statute or otherwise confer such a right. Likewise, the States may bar their courts from accepting guilty pleas from any defendants who assert their innocence. Cf. Fed. Rule Crim. Proc. 11, which gives a trial judge discretion to "refuse to accept a plea of guilty . . . ." We need not now delineate the scope of that discretion.

him this choice but should have insisted on proving him guilty of murder in the first degree. The States in their wisdom may take this course by statute or otherwise and may prohibit the practice of accepting pleas to lesser included offenses under any circumstances.[12] But this is not the mandate of the Fourteenth Amendment and the Bill of Rights. The prohibitions against involuntary or unintelligent pleas should not be relaxed, but neither should an exercise in arid logic render those constitutional guarantees counterproductive and put in jeopardy the very human values they were meant to preserve.

The Court of Appeals for the Fourth Circuit was in error to find Alford's plea of guilty invalid because it was made to avoid the possibility of the death penalty. That court's judgment directing the issuance of the writ of habeas corpus is vacated and the case is remanded to the Court of Appeals for further proceedings consistent with this opinion.

*It is so ordered.*

Mr. Justice Black, while adhering to his belief that United States v. Jackson, 390 U. S. 570, was wrongly decided, concurs in the judgment and in substantially all of the opinion in this case.

Mr. Justice Brennan, with whom Mr. Justice Douglas and Mr. Justice Marshall join, dissenting.

Last Term, this Court held, over my dissent, that a plea of guilty may validly be induced by an unconstitutional threat to subject the defendant to the risk of death, so long as the plea is entered in open court and the defendant is represented by competent counsel who is aware of the threat, albeit not of its unconstitutionality. *Brady* v. *United States*, 397 U. S. 742, 745–758

---

[12] North Carolina no longer permits pleas of guilty to capital charges but it appears that pleas of guilty may still be offered to lesser included offenses. See n. 1, *supra*.

(1970); *Parker* v. *North Carolina,* 397 U. S. 790, 795 (1970). Today the Court makes clear that its previous holding was intended to apply even when the record demonstrates that the actual effect of the unconstitutional threat was to induce a guilty plea from a defendant who was unwilling to admit his guilt.

I adhere to the view that, in any given case, the influence of such an unconstitutional threat "must necessarily be given weight in determining the voluntariness of a plea." *Parker* v. *North Carolina,* 397 U. S., at 805 (dissent). And, without reaching the question whether due process permits the entry of judgment upon a plea of guilty accompanied by a contemporaneous denial of acts constituting the crime,[1] I believe that at the very least such a denial of guilt is also a relevant factor in determining whether the plea was voluntarily and intelligently made. With these factors in mind, it is sufficient in my view to state that the facts set out in the majority opinion demonstrate that Alford was "so gripped by fear of the death penalty"[2] that his decision to plead guilty was not voluntary but was "the product of duress as much so as choice reflecting physical constraint." *Haley* v. *Ohio,* 332 U. S. 596, 606 (1948) (opinion of Frankfurter, J.). Accordingly, I would affirm the judgment of the Court of Appeals.

---

[1] The courts of appeals have expressed varying opinions on this question. Compare *McCoy* v. *United States,* 124 U. S. App. D. C. 177, 179–180, 363 F. 2d 306, 308–309 (1966); *Bruce* v. *United States,* 126 U. S. App. D. C. 336, 342 n. 17, 379 F. 2d 113, 119 n. 17 (1967); *Griffin* v. *United States,* 132 U. S. App. D. C. 108, 109–110, 405 F. 2d 1378, 1379–1380 (1968); *Maxwell* v. *United States,* 368 F. 2d 735, 739 n. 3 (CA9 1966) (court may accept guilty plea from defendant unable or unwilling to admit guilt), with *United States ex rel. Crosby* v. *Brierley,* 404 F. 2d 790, 801–802 (CA3 1968); *Bailey* v. *MacDougall,* 392 F. 2d 155, 158 n. 7 (CA4 1968); *Hulsey* v. *United States,* 369 F. 2d 284, 287 (CA5 1966) (guilty plea is infirm if accompanied by denial of one or more elements of offense).

[2] *Brady* v. *United States,* 397 U. S., at 750.