DECISION
This case is before the Court on Plaintiff's claim for damages pursuant to the Criminal Injuries Compensation Act, R.I.G.L. 12-25-1 et seq., hereinafter referred to as The Act.
In the instant case, everything is in dispute. Plaintiff alleges that on December 6, 1988 he was a victim of an assault with a dangerous weapon by one Michael Pockar who has entered as an intervenor in this case.
Plaintiff claims that on the date in question he was employed at a car wash in the City of Cranston. It is alleged that Pockar, along with a companion, Ms. Heidi Kitchen, went to this location and, while pointing what looked to be an Uzi submachine, but which in reality was a Crossman Air Rifle BB gun, threatened to kill Plaintiff. Pockar then fled the scene with Plaintiff, who would claim to suffer such devastating psychological injuries as a result of this assault that he would not work for years thereafter, in pursuit.
Pockar stopped at a Cumberland Farms store in order to allow Ms. Kitchen to exit his vehicle and proceed a short distance to the house of a relative as was their custom. At this point, Plaintiff confronts Pockar and again is shown the gun in a manner that he claims was, and Pockar admits, threatening. Plaintiff then calls the Cranston Police Department.
Pockar is apprehended at his house and advised the arresting officer that he had left the gun with a clerk at the Cumberland Farm's store. Police retrieved the weapon.
Michael Pockar was charged with assault with a dangerous weapon and on July 3, 1990 entered a plea of Nolo Contendere to the charge of simple assault. However, the plea was entered pursuant to North Carolina v. Alford, 400 U.S. 25 (1970).
Plaintiff claims that as a result of this assault he suffered post-traumatic stress disorder and treated with one Dr. Robert Marzilli, a licensed psychologist, from February 17, 1989 through June 25, 1990.
Hearings were held on the instant case during August and September of 1995.
At the hearing, Pockar claimed that his use of the gun was to in fact scare Plaintiff because he (Pockar) was in fear of being assaulted by Karten. Furthermore, he stated that his use of a so-called Alford plea was evidence that he did not in fact admit to assaulting Plaintiff. Also, Pockar pointed to a Worker's Compensation claim as being the source of Plaintiff's injuries rather than any alleged assault.
The testimony of both Robert Karten and Michael Pockar was unconvincing. Both attempted to craft answers to fit some overall theory of the events in question that would justify their conduct. Both tended to engage in memory lapses at convenient times and offered answers to questions that, at best, could be classified as unresponsive.
After careful consideration of the testimony and evidence presented at the hearing, this Court finds that Plaintiff, Robert Karten, was in fact a victim as defined in The Act. Pockar admitted in his testimony that he was trying to scare Karten by displaying the gun and it appears that he was successful in placing him in apprehension of bodily harm. This Court is not persuaded by Pockar's claim of self defense. Furthermore, this Court finds that, as a result of this assault, Karten did in fact suffer injuries.
However, a determination of the actual damage suffered is difficult in the instant case. Karten was the victim of a previous unrelated assault in 1987. Also, while employed by the Cranston School Department, he suffered work-related injuries in October of 1987 which also predates the assault in the case at bar. The assault which is the subject of this case occurred in December of 1988 and was followed in January 1989 by a second Worker's Compensation claim related to Plaintiff's school department duties.
Compensation under the Criminal Injuries Compensation Act is controlled by R.I.G.L. 12-25-5, which reads in pertinent part:
 The court may render judgment for compensation or issue an order approving a settlement under this chapter for —
 (a) expenses actually and reasonably incurred as a result of the personal injury or death of the victim;
 (b) pecuniary loss to the dependents of the deceased victim;
 (c) pain and suffering of the victim; and
 (d) any other pecuniary loss resulting from the personal injury or death of the victim, 1 the amount of which the court finds upon the evidence to be reasonable and necessary.
 In determining the amount of the judgment or order approving a settlement, the court may, in its discretion, take into consideration the rates and amounts payable for injuries and death under other statutes of this state and of the United States, and the amount of revenue in the violent crimes indemnity fund and the number and nature of claims pending against it. (Emphasis added).
Section 12-25-2(7) (A) defines "pecuniary loss" for personal injury as follows:
 (1) medical expenses (including psychiatrist care) for which th victim is not compensated by any other source;
 (2) hospital expenses for which the victim is not compensated by any other source;
 (3) loss of past earnings for which the victim is not compensated by any other source;
 (4) loss of future earnings because of a disability resulting from the personal injury; and. . .
Because of the lack of funds available to pay victims under The Act, this Court has established a policy of awarding pain and suffering based on a rate of one hundred twenty-five dollars ($125) a week for partial disability and two hundred fifty dollars ($250) a week for total disability. The Court understands that the amounts are significantly less than the normal standards in a civil action but, because of the lack of resources available to the fund, a compromise must be reached that is fair to all.
In the instant case, Plaintiff has not made a claim for lost wages and the only medical bill submitted by Plaintiff was from Dr. Robert Marzilli with whom Karten treated from February 17, 1989 until June 25, 1990. However, Dr. Marzilli was dealing with problems beyond the assault in the instant case. In fact, it does not appear that the assault in question was the subject of any appointment after June 26, 1989, which was Karten's thirteenth visit. Therefore, this Court awards payment of those thirteen visits at the rate of seventy-five dollars ($75) per visit for a total of nine hundred seventy-five dollars ($975).
In addition, this Court finds that in the area of pain and suffering that Plaintiff was disabled from December 6, 1988 until June 25, 1990 for a total of twenty-nine weeks and that twenty percent of that disability resulted from the assault in this case for a total pain and suffering award of one thousand four hundred and fifty dollars ($1450).
In summary, Plaintiff Robert Karten is found to be a victim of an assault which took place on December 6, 1988. As a result of that assault he sustained medical bills in the amount of $975 and pain and suffering of $1450. In addition, counsel for Plaintiff is awarded $363.75 plus costs.
Counsel for the General Treasurer will prepare a judgment in accordance with this decision.