684 So.2d 68 (1996)
STATE of Louisiana
v.
Brian Quincy BOWIE.
No. CR95-795.
Court of Appeal of Louisiana, Third Circuit.
November 13, 1996.
Writ Granted January 31, 1997.
*70 Richard Paul Weimer, Michael Harson, Lafayette, for State of Louisiana.
Carrol Lee Spell Jr., Lafayette, for Brian Quincy Bowie.
Before COOKS, PETERS and GREMILLION, JJ.
COOKS, Judge.
Defendant, Brian Quincy Bowie, was charged by bill of indictment with manslaughter, a violation of La.R.S. 14:31. Pursuant to a plea agreement, Bowie entered a plea of no contest to an amended charge of negligent homicide, a violation of La.R.S. 14:32. The trial judge used the reports submitted by Lafayette Parish Police Detective Kip Judice and Officer Terryll Regan as evidence of a factual basis for accepting Bowie's plea. Bowie was sentenced to serve five years at hard labor. On appeal, he contends his sentence is excessive. Discovering a patent error on examination of the record, we pretermit fully considering the errors assigned and remand the case with instructions. As discussed below, the record of the plea proceedings does not contain evidence of a factual basis, legally sufficient, to establish defendant's actual guilt of the crime charged as required by North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162, and its progeny.
To convict an offender of negligent homicide, the state must prove beyond a reasonable doubt that the offender killed a human being by criminal negligence. La. R.S. 14:32. Criminal negligence "exists when, although neither specific nor general criminal intent is present, there is such disregard for the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances." La.R.S. 14:12. The State is required to show more than a mere deviation from the standard of ordinary care to establish proof of criminal negligence. State v. Jones, 298 So.2d 774 (La. 1974). The negligent homicide statute proscribes conduct that goes beyond carelessness, mistake, error in judgment or omission of duty. State v. Fenner, 94-1498 (La.App. 4 Cir. 11/16/95), 664 So.2d 1315. It is more than the mere failure to do something which a reasonable and prudent man would do, or the mere doing of something which a reasonable and prudent man might not do, on cool reflection, after considering the degree of harm likely to follow. Further, the "consequences" alone do not determine the criminal culpability of the actor. Our law recognizes an actor's conduct may be justifiable when he reasonably believes such killing is necessary to save his life or prevent him from receiving great bodily harm. La.R.S. 14:20(1).
The instant record shows, when defendant entered his plea, the State indicated it would have proven at trial "on August 21st of 1993, the defendant negligently killed one Christopher Scott Hardy" in the Parish of Lafayette with a .38 caliber revolver. Additionally, the investigative reports of Detective Kip Judice and Officer Terryll Regan were offered and submitted by the State to establish a factual basis for accepting defendant's plea. Counsel for defendant then expressed defendant's intent to plead "no contest" to the charge. The court inquired:
Q. Mr. Bowie, did you understand that by pleading no contest, if I accept the plea, then that amounts to a conviction and I would adjudicate you, if there was a factual basis for accepting the plea, I would *71 adjudicate you as guilty. Do you understand?
A. Yes sir.
The plea form reflects the word "guilty" was stricken before it was signed by defendant. The following language also was stricken from the preprinted form: "the only reason I am pleading is that I am, in fact, guilty as charged." Defendant also did not acknowledge the correctness of the State's account of the alleged crime.
The officers' statements, the only evidence offered by the State to establish the commission of the charged offense, reflect the following events transpired. On August 21, 1993, Brian Bowie, Jason Coleman, Nolan Winters, Joseph Johnson and Orlando Babineaux went to Pete's, a local bar frequented by college students. Coleman reported only Babineaux and Johnson entered the bar since they arrived shortly before Pete's 2:00 a.m. closing. As Babineaux was leaving Pete's, an altercation began between him and "a large number of males." The arguing group moved from Pete's entrance to the parking lot, and the verbal encounter between Babineaux and the group of males escalated into a physical fight. The group of males, comprised of approximately 30 males, encircled Babineaux and began to administer on him a "fairly severe beating." Realizing they were outnumbered, Bowie, Coleman, Winters, and Johnson, standing outside the bar, tried to leave. Several males splintered from the group and began following them. Coleman, Johnson, and Winters were struck by several unidentified males in the parking lot as they attempted to make good their escape.
Two Lafayette police officers, Joey Williams and Steel Viccellio, observed the first group of males who were still fighting with Babineaux. As they attempted to stop this exchange, the splintered group of males continued to pursue Coleman and Bowie, who traveled together that evening, as they proceeded hastily in the direction of Bowie's parked car. At some point as the group neared, Bowie fired a warning shot into the air. Detective Kip Judice, who was working uniform security, responded to Bowie's gunfire. Someone told him a male wearing a green and white striped shirt had a gun. Detective Judice reported he saw two males, one wearing a green and white striped shirt, walking at a quick rate with twenty to twenty-five males following them. He and the other police officers, in turn, began to follow the group of males.
Detective Judice then observed the group of angry males surround Bowie's vehicle as he tried to drive away. He also witnessed a male in the group, later identified as the decedent, open the driver's side door where Bowie was sitting and "reach into the vehicle for what appeared to be to strike him." Detective Judice noticed Bowie and Coleman struggling to close the door on the driver's side. During the struggle, Bowie produced a handgun and fired two shots. The bullet released struck Christopher Hardy, the decedent, in the chest fatally injuring him. Bowie fled the scene and was apprehended after losing control of his vehicle.
The trial judge accepted the investigative reports of the officers and found a factual basis existed to support the offered "no contest" plea by Bowie to the negligent homicide charge. He sentenced defendant to serve five years at hard labor. On appeal, defendant attacks the sentence as excessive and asserts the trial court erred in three particulars by:
1. Failing to give any weight to the mitigating factors which were present in this case including those set forth in Louisiana Sentencing Guideline Section 209(C)(1),(6), and (7).
2. Finding, under the circumstances surrounding the commission of the offense, firing a warning shot was an aggravating rather than a mitigating circumstance.
3. Imposing a sentence that was excessive and constitutes cruel and unusual punishment under the Eight Amendment to the United States Constitution and Article 1, Section 20 of the Constitution of the Louisiana of 1974.

ERRORS REQUIRING REMAND
An appellate court has a mandate to initially examine all criminal records lodged on appeal to discover whether any patent errors exist. Although defendant did *72 not raise the issue, we notice the evidence presented at the Boykin hearing should have alerted the trial court that a significant factual basis was required to support his "no contest" plea. "When a guilty plea is otherwise voluntary, there is no necessity to ascertain a factual basis for that plea unless the accused protests his innocence or for some other reason the trial court is put on notice that there is a need for such an inquiry." State v. Linear, 600 So.2d 113, 115 (La.App. 2 Cir.1992). In the latter instance, due process requires a judicial finding of a significant factual basis for the defendant's plea. North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162. While defendant did not affirmatively state he was innocent of the offense, the altered plea form, his "no contest" plea, and the events surrounding the shooting should have put the district court on notice that a judicial finding of a substantial factual basis for the plea was required.
"Gross negligence" is negated if a defendant charged with committing negligent homicide kills in self-defense. A homicide, even when deadly force is used, may not constitute a crime legally punishable if "committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger." La.R.S. 14:20(1). Under such special circumstances, a defendant's conduct is justifiable and does not constitute a gross deviation from the standard of care legally expected and demanded, though one of the consequences may culminate in the tragic loss of a life. The use of a firearm by a defendant, in such instance, does not per se render his conduct criminal. The reports introduced by the State, the only evidence presented to support a factual basis for the charged offense, also interject evidence tending to show justifiable circumstances may have existed in this case which may legally excuse defendant's conduct. The record as it stands, thus, is insufficient to establish the minimum factual basis required by law to support the charged offense. The State must offer other evidence sufficient to show defendant was not justified in believing the shooting was necessary to save his life or protect him from receiving great bodily harm. Defendant witnessed a group of males attack and severely beat one of his friends minutes before part of the same group began pursuing him and Coleman. He fired a warning shot, but the group of angry males continued to advance. He attempted to leave the scene but was prevented from doing so by the group of twenty to twenty-five males who surrounded his vehicle and struggled with him and Coleman to gain entry into the vehicle. The fatal shooting occurred after the decedent opened the door on the driver's side of the vehicle and attempted to strike defendant.
The trial judge accepted the investigative reports as evidencing a factual basis for the plea without making any inquiry or articulating the findings he deemed significant to adjudge defendant "guilty" of the offense charged. On review, we must find the Boykin records do not contain a substantial factual basis to support defendant's plea to negligent homicide as required by North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162. The State failed to prove beyond a reasonable doubt that the homicide was not committed in self-defense. State v. Makar, 578 So.2d 564 (La.App. 3 Cir.1991). We cannot affirm a conviction where proof in the record of an essential element of the crime charged is lacking or the record reasonably reveals facts tending to establish legal justification for the commission of the homicide. The State is entitled to correct this deficiency however, if possible, at an additional Boykin hearing. Linear, 600 So.2d 113.
Moreover, we cannot say Bowie's "no contest" plea was intelligently and voluntarily entered. State v. Fletcher, 624 So.2d 470 (La.App. 2 Cir.1993); State v. Jordan, 619 So.2d 648 (La.App. 2 Cir.1993); Linear, 600 So.2d 113. A defendant may knowingly, understandingly and voluntarily consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituted a crime. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162. An express admission of guilt is not a constitutional requirement for the imposition of criminal penalties, and the fact that a *73 defendant believes he is innocent, and makes such belief known to the court, does not preclude him from entering a guilty plea. Id.; Linear, 600 So.2d 113. Although the United States Supreme Court has recognized a defendant need not admit guilt before criminal penalties may be imposed, the Supreme Court also recognized a need for the record to contain "strong evidence of actual guilt," i.e,., a sufficient factual basis to enable the judge to test whether the plea was intelligently entered. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162; State v. Schexnayder, 93-1673 (La.App. 3 Cir. 4/20/94); 640 So.2d 426.
Additionally, the trial judge imposed the maximum statutory sentence in this case for defendant's alleged offense. Generally, a maximum sentence is appropriate only for the worst kind of offender and the most egregious violation. Bowie has no prior record; and, at the time of sentencing, he was a university student. As discussed, the record as it stands, strongly suggests that Bowie's conduct, though tragic in result, was not without provocation or imbued with premeditation. The trial judge discounted these mitigating factors finding Bowie's initial act of firing a weapon in the air to ward off the approaching group evidenced his intent to use the weapon. Bowie's ultimate intent or actual use of the firearm, if legally justified, does not "zero out" the mitigating impact of his initial conduct or convert it to an aggravating factor. As mentioned, the use of a firearm in Louisiana is lawful if a person reasonably believes he is in imminent danger of losing his life or receiving great bodily harm and such force is necessary to save him from the danger.
For the reasons expressed, we remand the case to the trial court for further proceedings consistent with this opinion and with instructions that it shall conduct an additional Boykin hearing to determine whether a significant factual basis for the plea entered by defendant exists and whether the plea was freely and voluntarily entered as required by the principles articulated in Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162. If at the conclusion of this hearing and after granting the State opportunity to present other evidence, the trial judge finds a legally sufficient factual basis exists to support the charged offense, he is instructed further to re-examine the sentence imposed in this case particularly considering the observation of this court and the Louisiana Sentencing Guidelines, in effect at the time of original sentencing, to determine whether the sentence imposed is appropriate and not excessive.

DECREE
The district court shall conduct an additional Boykin hearing and allow the State opportunity to present other evidence of defendant's guilt at said hearing within 90 days after rendition of this opinion and within 10 days after the hearing the court shall submit a certified copy of its ruling and a transcript of the hearing for inclusion in the appellate record now lodged with this court. Accordingly, we pretermit full review of the errors assigned by defendant pending remand of the case to the trial court and supplementation of the record.
REMANDED WITH INSTRUCTIONS.
GREMILLION, J., dissents and assigns reasons.
GREMILLION, Judge, dissenting.
I respectfully disagree with the majority in this matter. The majority relies heavily on the defense of justifiable homicide (La.Crim. Code art. 20(1)) in finding error patent in the record. It is my opinion the trial judge properly conducted a legally sufficient factual hearing before concluding that the defendant was guilty of negligent homicide. In my opinion, there is sufficient evidence in the record when viewed in the light most favorable to the prosecution that would support the trial judge's finding that defendant's acts were not justifiable. See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
Further, it is my opinion that defendant's "no contest" plea was intelligently and voluntarily entered following a complete Boykin hearing conducted by the trial court. I, therefore, disagree with the majority and *74 would find there is strong evidence of actual guilt on the part of defendant.