DAMON J. KEITH, Circuit Judge,
concurring.
I write separately to highlight both the circumstances under which this case came before the Court and the significance of *625 those circumstances for those charged with adjudicating similar actions in the future.
As discussed by the majority, Operation Turnaround was a highly corrupt government investigation in which an informant, inter alia, maliciously falsely identified innocent people as participants in drug sales and stole controlled “buy money” from DEA agents. Several law enforcement officers, including the Defendants in this case, were charged and prosecuted for their complicity in the informant’s crimes. Some admitted perjuring themselves at the trials of accused individuals, falsely identifying them as participants in drug sales despite knowing those individuals to be innocent. Other Defendants were aware that the informant was stealing money and' purchasing drugs for himself during controlled buys and yet, continued to use his services. Indeed, the corruption was so widespread and pervasive that the investigation dissolved, and the government was forced to dismiss the charges against Plaintiffs.
Unfortunately, because of the dark cloud of corruption that has hung over this investigation, we cannot be absolutely confident in any of the fruits of this investigation. However, I join in the majority’s thorough and well-reasoned opinion because we can rule with sufficient certainty that while Defendants violated the constitutional rights of others, they did not violate Plaintiffs’ rights.
The district court made much of the fact that Plaintiffs entered guilty pleas in the drug cases against them in its Opinion and Order of January 4, 2012, see l:08cvl253, R.137. Despite the extent of law enforcement’s egregious maleficence, the court contemptibly dismissed Plaintiffs’ arguments as “conclusory allegations that they were ‘framed,’ ” while referencing Plaintiffs’ now-vacated “admissions of guilt” more than thirty times in its opinion. R.137, PgID 11. The court even raised, sua sponte, the judicial estoppel doctrine against Plaintiffs, on the basis of Plaintiffs’ entries of guilty pleas, even though the court was aware of the illegitimacy of the investigation, concluding that Plaintiffs’ alleged attempts to “gain unfair advantage” and “cash in” were “too much to take”. R.137, PgID 35-38 (internal quotations omitted).
Where individuals are being framed by law enforcement officials, as occurred throughout Operation Turnaround, a guilty plea can become an accused individual’s only choice, and not the “voluntary and intelligent choice among the alternative courses of action open to the defendant.” North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). That Plaintiffs entered guilty pleas before their charges were dismissed does not, alone, signal that they were guilty of any crime— particularly in the context of this deeply compromised investigation.
The pervasiveness of the corruption in this investigation highlights plea bargaining’s “innocence problem.”[1] It is a troubling, yet undeniable, fact and reminds trial courts that innocent people plead guilty to crimes for which they are not guilty because they are aware that if they were to lose at trial, their punishments would be more severe than the punishments they would receive upon the entry of a guilty plea.[2] At present, over 96% of federal convictions result from guilty *626 pleas — very few cases ever go to trial.[3] Criminal suspects are often encouraged to plead guilty by prosecutors, whose own careers are advanced by the number of convictions they secure, and by trial courts, which hand down discounted sentences for those who demonstrate so-called acceptance of responsibility by pleading guilty. “Through charge selection and influence over sentencing ranges, prosecutors today possess striking powers to create significant sentencing differentials.”[4]
In the context of the fallout of Operation Turnaround, then, the district court’s determination that Plaintiffs “receive[d] the benefit of their guilty pleas” and yet were trying to “have things both ways” is disturbing. R.137, PgID 38. Indeed, such attitudes contribute to the perils of plea bargaining; an accused person who senses hostility from the trial court may opt to plead guilty even if he or she is innocent, in order to avoid being sentenced at trial by that judge.[5] That the government itself was forced to vacate Plaintiffs’ guilty pleas after the extent of law enforcement’s impropriety was revealed not only undercuts any claim that Plaintiffs have somehow enjoyed an unfair advantage during the course of these proceedings, but also highlights the fallacy that guilty pleas are only entered by guilty people.
I concur in the majority opinion.

. Lucian E. Dervan and Vanessa A. Edkins, Ph.D, "The Innocent Defendant’s Dilemma: An Innovative Empirical Study of Plea Bargaining’s Innocence Problem,” 103 J.Crim. L. & Criminology 1, 17(2013).

. See Id. at 3-4 and 15-17.

. Id. at 13.

. Id. at 14.

.See Dervan and Edkins, supra note 1 at 15-17.