

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. WR-82,876-01

### EX PARTE BRYAN ELLIOTT PALMBERG, Applicant

## ON APPLICATION FOR A WRIT OF HABEAS CORPUS IN CAUSE NO. 1121345-A FROM THE 179TH DISTRICT COURT OF HARRIS COUNTY

ALCALA, J., filed a dissenting opinion in which MEYERS and JOHNSON, JJ., joined.

### DISSENTING OPINION

In this application for a post-conviction writ of habeas corpus, Bryan Elliott Palmberg, applicant, seeks relief from his felony conviction for possession of a controlled substance on the basis that his plea of guilty to that offense was unknowing and involuntary. *See* TEX. CODE CRIM. PROC. art. 11.07; *Ex parte Mable*, 443 S.W.3d 129, 131 (Tex. Crim. App. 2014). In particular, applicant alleges that his plea was rendered involuntary because, at the time of his plea, he was unaware that the substance he had been charged with possessing was fully consumed by a chemical field-test, leaving no remaining evidence for confirmatory testing

by an accredited forensic laboratory. Applicant, the State, and the habeas court all agree that applicant is entitled to relief from his conviction on the basis that the State would not have prosecuted him for the offense, and that he would not have pleaded guilty, had the parties known that there was no evidence available for testing by a laboratory chemist. This Court's majority opinion denies his request for relief, but I would grant it. I, therefore, respectfully dissent.

The facts of the offense at this juncture are undisputed. In 2007, a police officer arrested applicant for public intoxication and recovered what the officer believed to be a crack-cocaine rock from applicant's pocket. The officer field-tested the substance and received a positive result, indicating the presence of cocaine. Applicant was charged with possession of cocaine. Pursuant to a plea agreement with the State, applicant waived indictment and was sentenced to ninety days' confinement in the county jail.

Two years later, the Houston Police Department Crime Laboratory drafted a letter to the Harris County District Attorney's Office indicating that the evidence had been examined, that the entire visible sample had been consumed in the field test, and that no unprocessed sample was available for analysis. Five years after that, the State discovered this letter and forwarded it to the Harris County Public Defender's Office, pursuant to the State's continuing obligation to disclose exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963). After receiving that information, applicant filed the instant application for a writ of habeas corpus. The habeas court adopted the parties' agreed-upon findings of fact and

conclusions of law, and it recommended that relief be granted.

The State agrees that applicant is entitled to habeas relief. In its brief to this Court, the State observes that a conviction for possession of a controlled substance may not be sustained based solely on an officer's field test. *See Curtis v. State*, 548 S.W.2d 57, 59 (Tex. Crim. App. 1977). The State agrees with applicant's contention that, "[b]ecause he was unaware that the substances seized from him had been fully consumed by the chemical field-test, rendering them unavailable for confirmatory testing, his plea of guilty to possessing cocaine was unknowing and involuntary." The State continues, "Had the parties known of the variance at the time of the applicant's plea, the case would likely have been dismissed by the Harris County District Attorney's Office." Urging this Court to grant applicant his requested relief, the State concedes that, "[s]imply put, the applicant stands convicted of an offense for which there is insufficient evidence."

*Ex parte Mable* is similar to this case and, I conclude, its reasoning and holding are applicable here. *See Mable*, 443 S.W.3d at 130-31. In that case, Mable pleaded guilty to possession of a controlled substance, but it was later revealed through laboratory testing that the substance that he was arrested for possessing did not actually contain any illicit materials. *Id.* This Court granted habeas relief, explaining that all the parties involved "incorrectly believed [that Mable] had been in possession of drugs. This fact is crucial to this case, and while operating under such a misunderstanding, [Mable] cannot be said to have entered his plea knowingly and intelligently." *Id.* at 131. As in *Mable*, here all of the parties relied upon

their mutual belief, later proven to be incorrect, that the evidence would show that applicant possessed a controlled substance. Perhaps more importantly, the State concedes that it would not have prosecuted applicant had it been aware of the fact that there was no admissible evidence to support applicant's conviction. Given that there is no dispute that, had the parties been aware that it was impossible for the laboratory to test the substance, applicant would not have pleaded guilty to the offense and the State would not have prosecuted him for the offense, this case is indistinguishable from *Mable*.

This case is unlike *Ex parte Barnaby*, a case in which this Court denied habeas relief to Barnaby because only one of his four convictions was affected by the complained-of evidence. *See Ex parte Barnaby*, 475 S.W.3d 316, 327 (Tex. Crim. App. 2015). Barnaby was arrested for possessing a bag of white rocks that resembled crack-cocaine, which field-tested positive as cocaine, and a subsequent laboratory test confirmed that the substance was cocaine. *Id.* at 319. Barnaby pleaded guilty to possession with intent to deliver that substance, and he also pleaded guilty to three other charges arising from other incidents. *Id.* at 326. Two years later, Barnaby was informed that the laboratory technician who tested the substance was under investigation for fabricating lab-test results. *Id.* at 320. Barnaby filed an application for a writ of habeas corpus contending that, because the lab technician's report was false, his guilty plea was involuntary. *Id.* at 322. This Court denied Barnaby habeas relief, reasoning that, because he had three other charges against him for separate crimes, and because these three other charges were included in the package plea bargain, he had failed

to demonstrate the involuntariness of his plea. We said, "[T]he value of the plea bargain . . . outweighed the value of knowing, before entering into his plea, that the laboratory report in this single case was false." *Id.* at 327. The case before us is distinguishable because here, unlike *Barnaby*, applicant was convicted of a single possession of a controlled substance, and, therefore, there is no suggestion that he received any benefit from his plea bargain that would have outweighed the significance of the incorrect information upon which he relied in pleading guilty. In other words, in Barnaby's case, the false lab report was not material to his decision to plead guilty because the report affected only one of four offenses disposed of in the plea bargain. Here, however, as both applicant and the State suggest, the existence of testable evidence against applicant was material to his decision to plead guilty.

Although it is factually distinguishable in that it involved a package deal plea bargain and in that it involved an allegation of false evidence, *Ex parte Barnaby* is instructive with respect to how a habeas court should decide whether a particular fact is material to a defendant's decision to plead guilty. *See id*. at 318. The *Barnaby* Court explained, "In determining the voluntariness of a plea of guilty, the more logical question is whether there is a reasonable likelihood that [false evidence or undisclosed information] affected the defendant's decision to plead guilty[.]" *Id.* at 325. To determine whether a defendant reasonably would have chosen to pursue a trial over a guilty plea, the Court examined "whether the value of the undisclosed information . . . was outweighed by the benefit of accepting the plea offer." *Id.* at 326.

Because the amount and strength of the evidence has been recognized as a proper basis for entering a guilty plea, it was reasonable for the habeas court to consider those matters in finding that applicant's plea was involuntary. A defendant may consider the strength of the State's evidence when deciding whether to plead guilty. *See North Carolina v. Alford,* 400 U.S. 25, 37-38 (1970) (holding that a defendant may choose to plead guilty due to the quality and quantity of the State's evidence against him even while believing himself innocent). Here, in assessing the merits of applicant's claim, the habeas court properly considered and determined that, had applicant known that the substance could not be tested by a laboratory and that the State would not have prosecuted him for the offense if it had been aware of that fact, he would not have pleaded guilty to this offense and, therefore, his guilty plea was involuntary. I agree. The majority opinion, however, observes that, "so long as [the applicant] knew what he did not know—then he was sufficiently aware of the relevant circumstances[.]" Such a holding would call into question cases like *Mable*, in which the evidence showed that Mable pleaded guilty before a laboratory had examined the substance he was charged with possessing, and before he learned that the testing had failed to yield any positive result for controlled substances. With respect to the voluntariness of the plea at the time it was entered into, I can see no legal distinction between the position of Mable and applicant, both of whom pleaded guilty knowing that the substances in their respective cases had not yet been tested by a laboratory. It is true that Mable's substance was later tested and found not to contain a controlled substance, whereas applicant's substance was never tested.

But that is a distinction without a difference. With respect to the materiality question, there is no difference between the laboratory report in *Mable* showing that Mable did not possess a controlled substance and the State's conceded inability in this case to determine whether the substance applicant possessed was a controlled substance. In each case, the State had no evidence to establish guilt. The majority opinion cannot be reconciled with *Mable*, and I, therefore, conclude that this decision implicitly overrules *Mable*. Because I continue to believe that *Mable* was correctly decided and should remain the controlling precedent for deciding when pleas are involuntary under these or similar circumstances, I would grant relief to applicant. I, therefore, respectfully dissent.

Filed: February 24, 2016

Publish