RICHARD BAILLARGEON *v.* COMMISSIONER
OF CORRECTION
(AC 20729)

Lavery, C. J., and Foti and Flynn, Js.

Argued September 20, 2001—officially released January 29, 2002

*Adam A. Laben*, special public defender, with whom, on the brief, was *Denise Ansell*, special public defender, for the appellant (petitioner).

*Lisa A. Riggione*, senior assistant state's attorney, with whom were *Vincent J. Dooley*, senior assistant state's attorney, and, on the brief, *Mark S. Solak*, former state's attorney, and *Roger Caridad*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

LAVERY, C. J. The petitioner, Richard Baillargeon, appeals from the judgment of the habeas court dismissing his petition for a writ of habeas corpus. He claims that the habeas court improperly (1) held that neither his trial nor sentencing counsel was ineffective, (2) applied the *Strickland*[1] standard to his attempt to withdraw his plea and (3) failed to address his claim that the state lacked a factual basis for charging him with the crime to which he pleaded guilty. We affirm the judgment of the habeas court.

According to the factual statement made by the state at his sentencing hearing, the petitioner took a female

---

[1] *Strickland* v. *Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

to a reservoir in Killingly against her will where he forced her to engage in intercourse. The habeas court found that the attack occurred on July 12, 1994, and that the victim filed a complaint with the police on August 12, 1994. The police questioned the petitioner later that month, and he voluntarily gave a statement claiming that the intercourse was consensual. An arrest warrant was issued on March 15, 1995, and he was arrested on March 20, 1995. He then made a second statement in which he admitted that he had lied in his first statement and that the intercourse was forced.

On March 26, 1996, the day that his case was scheduled for jury selection, the petitioner pleaded guilty in accordance with *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), to sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1).[2] The trial court canvassed the petitioner in accordance with Practice Book § 711, now § 39-19, and found the plea to be "entered voluntarily and understandingly, and with the assistance of competent counsel."[3] At the petitioner's request, the court scheduled sentencing for May 3, 1996.

Between the time of his plea and sentencing, the petitioner expressed dissatisfaction with his appointed counsel, Ramon J. Canning of the public defender's office for the judicial district of Windham, and his desire to fire Canning, to withdraw his plea and to have a trial on the merits. He unsuccessfully attempted to castrate himself to draw attention to his plight, and sent a letter

[2] The long form information presented on that date also charged the petitioner with kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A) and unlawful restraint in the first degree in violation of General Statutes § 53a-95. Part two of that information charged the petitioner with being a persistent dangerous felony offender in violation of General Statutes § 53a-40 (a). Those charges were not prosecuted following the defendant's plea agreement.

[3] The petitioner does not challenge the judicial canvass.

to the court with copies to the news media, the governor and other public officials that detailed his situation and proclaimed his innocence. He also filed a grievance against Canning with the statewide grievance committee.[4]

At Canning's request, attorney Lawrence Bates, Jr., represented the defendant at the sentencing hearing. The trial court treated the petitioner's letter as a request to withdraw his plea in accordance with Practice Book § 720,[5] now § 39-26. Because the court already had accepted the defendant's plea, the court analyzed whether the petitioner had proved one of the exceptions set forth in Practice Book § 721,[6] now § 39-27, and concluded that the petitioner was seeking to withdraw his plea because of ineffective assistance of counsel. After a colloquy with Bates, the court denied the petitioner's request to withdraw his plea and imposed the previously

---

[4] The grievance was dismissed.

[5] Practice Book § 720, now § 39-26, provides: "A defendant may withdraw his or her plea of guilty or nolo contendere as a matter of right until the plea has been accepted. After acceptance, the judicial authority shall allow the defendant to withdraw his or her plea upon proof of one of the grounds in Section 39-27. A defendant may not withdraw his or her plea after the conclusion of the proceeding at which the sentence was imposed."

[6] Practice Book § 721, now § 39-27, provides: "The grounds for allowing the defendant to withdraw his or her plea of guilty after acceptance are as follows:

"(1) The plea was accepted without substantial compliance with Section 39-19;

"(2) The plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed;

"(3) The sentence exceeds that specified in a plea agreement which had been previously accepted, or in a plea agreement on which the judicial authority had deferred its decision to accept or reject the agreement at the time the plea of guilty was entered;

"(4) The plea resulted from the denial of effective assistance of counsel;

"(5) There was no factual basis for the plea; or

"(6) The plea either was not entered by a person authorized to act for a corporate defendant or was not subsequently ratified by a corporate defendant."

agreed upon sentence of fifteen years incarceration, suspended after ten years, with five years probation.

On January 3, 2000, the petitioner filed a second amended habeas corpus petition, claiming that both Canning and Bates were ineffective. The habeas court conducted a trial and dismissed the petition in a memorandum of decision filed January 31, 2000. It concluded that Canning's performance was neither deficient nor prejudicial and Bates' performance, while deficient, was not prejudicial. A petition for certification to appeal from that court's decision was granted and this appeal followed. The petitioner largely restates the claims set forth in his habeas petition and asks that we reverse that court's decision and remand the case for trial.

We first note our standard of review. "In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Fuller* v. *Commissioner of Correction*, 59 Conn. App. 302, 303, 755 A.2d 380, cert. denied, 254 Conn. 943, 761 A.2d 760 (2000).

With that standard in mind, we assess the petitioner's claims. Additional facts will be provided as necessary.

I

The petitioner's first two claims allege that both appointed counsel were ineffective because of their failure to investigate his case adequately. Arguing the inverse of the habeas court's findings, he claims that his first attorney's representation was deficient and prejudicial and that his second attorney's representation was prejudicial. We are not persuaded.

Because a defendant often relies heavily on counsel's independent evaluation of the charges and defenses, the "right to effective assistance of counsel includes an adequate investigation of the case to determine facts relevant to the merits or to the punishment in the event of conviction." *Copas* v. *Commissioner of Correction,* 234 Conn. 139, 154, 662 A.2d 718 (1995); *Siemon* v. *Stoughton,* 184 Conn. 547, 556–57 n.3, 440 A.2d 210 (1981). Regardless, "counsel need not track down each and every lead or personally investigate every evidentiary possibility before choosing a defense and developing it." (Internal quotation marks omitted.) *Ostolaza* v. *Warden,* 26 Conn. App. 758, 765, 603 A.2d 768, cert. denied, 222 Conn. 906, 608 A.2d 692 (1992).

A habeas petitioner can "prevail on a constitutional claim of ineffective assistance of counsel [only if he can] establish both (1) deficient performance, and (2) actual prejudice." *Bunkley* v. *Commissioner of Correction,* 222 Conn. 444, 445, 610 A.2d 598 (1992); see also *Phillips* v. *Warden,* 220 Conn. 112, 132, 595 A.2d 1356 (1991). For ineffectiveness claims resulting from guilty verdicts, we apply the two-pronged standard set forth in *Strickland* v. *Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Levine* v. *Manson,* 195 Conn. 636, 639–40, 490 A.2d 82 (1985). For ineffectiveness claims resulting from guilty pleas, we apply the standard set forth in *Hill* v. *Lockhart,* 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), which modified *Strickland*'s prejudice prong. *Copas* v. *Commissioner of Correction,* supra, 234 Conn. 156–57.

To satisfy the performance prong, the petitioner must "show that counsel's representation fell below an objective standard of reasonableness." *Strickland* v. *Washington,* supra, 466 U.S. 688; *Aillon* v. *Meachum,* 211 Conn. 352, 357, 559 A.2d 206 (1989). A petitioner who accepts counsel's advice to plead guilty has the burden of demonstrating on habeas appeal "that the advice

was not within the range of competence demanded of attorneys in criminal cases." *Buckley* v. *Warden*, 177 Conn. 538, 542, 418 A.2d 913 (1979), citing *McMann* v. *Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970). The range of competence demanded is "reasonably competent, or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Internal quotation marks omitted.) *Buckley* v. *Warden*, supra, 543. Reasonably competent attorneys may advise their clients to plead guilty even if defenses may exist. *State* v. *Lopez*, 197 Conn. 337, 343, 497 A.2d 390 (1985). A reviewing court must view counsel's conduct with a strong presumption that it falls within the "wide range of reasonable professional assistance" and that a tactic that appears ineffective in hindsight may have been sound trial strategy at the time. *Strickland* v. *Washington*, supra, 689.

To satisfy the prejudice prong, the petitioner must show a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill* v. *Lockhart*, supra, 474 U.S. 59; *Copas* v. *Commissioner of Correction*, supra, 234 Conn. 156. "Reasonable probability" does not require the petitioner to show that "counsel's deficient conduct more likely than not altered the outcome in the case," but he must establish "a probability sufficient to undermine confidence in the outcome." *Strickland* v. *Washington*, supra, 466 U.S. 693–94; *Bunkley* v. *Commissioner of Correction*, supra, 222 Conn. 446. The *Hill* court noted that "[i]n many guilty plea cases, the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate . . . the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood

that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Hill* v. *Lockhart,* supra, 59; *Copas* v. *Commissioner of Correction,* supra, 156–57; *Minnifield* v. *Commissioner of Correction,* 62 Conn. App. 68, 72, 767 A.2d 1262, cert. denied, 256 Conn. 907, 772 A.2d 596 (2001). "A reviewing court can find against a petitioner on either ground, whichever is easier." *Valeriano* v. *Bronson,* 209 Conn. 75, 86, 546 A.2d 1380 (1988).

After considering the parties' written and oral arguments to this court, and our own review of the record and transcript, we conclude that the habeas court properly concluded that neither attorney's performance violated the petitioner's constitutional right to effective assistance of counsel.

## A

The petitioner first claims that Canning had guaranteed that he would be found guilty if he went to trial without first adequately investigating the state's case or his claim of innocence. As the habeas court found, and the petitioner agrees, the allegations that Canning provided ineffective assistance can be divided into two broad categories: (1) his failure to fully investigate the petitioner's defense that the intercourse was consensual and (2) his failure to interview individuals who would support the petitioner's claim that he was intoxicated when he signed the inculpatory statement.[7] The

---

[7] In his brief, the petitioner argued that Canning should have filed a motion to suppress the confession. At oral argument, however, he conceded that a motion to suppress was unnecessary in light of the judicial district's practice to hear such motions shortly before the beginning of the trial and the fact that a denial of that motion could negatively affect the petitioner's ability to obtain a favorable plea agreement. The petitioner then modified his stance, arguing that Canning should have interviewed witnesses recommended by the petitioner to properly assess the success of a suppression motion.

petitioner challenges the court's conclusions that Canning was not deficient in either category.

The petitioner asserts that the sexual encounter was consensual, and argues that the victim claimed otherwise only after she had reconciled with her husband and they discovered that they were infected with chlamydia. He claims that the victim accused him of rape to mask the fact that she contracted the disease while "sleeping around" during her marital separation. At the request of the state police, the petitioner was tested for chlamydia in October, 1994, and tested negative. He argues that Canning should have further investigated chlamydia epidemiology to determine whether the petitioner actually could have infected her. He attacks the court's factual findings that Canning used the negative test results in bargaining with the state to get a more favorable sentence. He also attacks the court's legal conclusion that further investigation into the disease itself would not have been "crucial." We disagree.

The court's factual finding that Canning took the chlamydia defense into account in plea negotiations was not clearly erroneous. At the habeas trial, Canning testified that he believed that not only did he think that the chlamydia test and the victim's thirty day delay in reporting the incident could have been used to impeach the victim's credibility, but that the state "knew that they had problems with the case." We do not reevaluate the credibility of witnesses or second-guess the habeas court on such questions of fact. *Crowder* v. *Commissioner of Correction*, 66 Conn. App. 864, 867, 786 A.2d 439 (2001). That, coupled with the petitioner's failure to put on any evidence to the contrary; cf. *Copas* v. *Commissioner of Correction*, supra, 234 Conn. 158 (upholding habeas court's finding that defense counsel's investigation inadequate where state's attorney testified that defense attorney never raised any potential defense during plea negotiations); leads us to conclude

that the habeas court properly could have found as it did.

We also disagree with the petitioner's assertion that the results of a further investigation into chlamydia would have been crucial to his case. The petitioner attempts to argue that because he may not have infected the victim, he did not in fact sexually assault her. That argument might have credence if he denied that he and the victim engaged in intercourse; here, however, the petitioner admitted that the intercourse occurred. Whether the petitioner infected the victim does not answer the question of whether she consented to the intercourse. This was recognized by Canning, who testified to that effect at the habeas trial.[8] Accordingly, the petitioner has not shown why it was unreasonable for Canning to not devote an inordinate amount of time to investigate a disease that would not be dispositive as to the petitioner's innocence. Canning also did not testify that he would have changed his recommendation to plead under the *Alford* doctrine even if he had learned more about chlamydia. See *Minnifield* v. *Commissioner of Correction*, supra, 62 Conn. App. 75. Additionally, as the court found, the petitioner did not attempt to introduce medical records of the victim and her husband to demonstrate their relevance or admissibility.[9]

[8] The petitioner's habeas attorney and Canning engaged in the following colloquy:

"[Petitioner's Attorney]: Was there any way in your opinion, sir, that you could have used [the petitioner's] test results for chlamydia coming back negative to clearly exonerate him of this purported charge?"

"Attorney Canning: The results of the test? As exoneration I didn't understand. I know [the petitioner] brought it up a couple of times. I didn't understand it. He certainly said that he had voluntary sexual intercourse with this woman . . . . The test results didn't seem to have a bearing on whether it was forced or voluntary."

[9] The habeas court noted that General Statutes §§ 19a-25 and 19a-215 may have protected the confidentiality of the records. The contours of those provisions have not yet been explored in a criminal case. We need not reach that issue, however, because the petitioner did not attempt to introduce the records.

The petitioner briefly restates allegations that he presented to the habeas court that Canning rendered ineffective assistance by failing to obtain a videotape of the petitioner's polygraph test or subsequent statement, failing to obtain police reports of the petitioner's prior interaction with the criminal justice system and failing to assess adequately the victim's credibility. For support, the petitioner notes the testimony of his expert witness, attorney Arthur P. Meisler, who cited Canning's failure to get a copy of the videotape or the police reports, among other alleged investigatory failures that the defendant does not cite on appeal, as evidence that Canning's preparation was deficient for a case on the active trial list.

Although the court noted that Meisler is "a respected lawyer with considerable experience representing criminal defendants," it disagreed with his conclusions that Canning's failure to get the claimed information was either deficient or prejudicial. Our own independent review of the record, briefs and transcripts leads us to the same conclusions. Meisler noted that the videotape, although not independently admissible, would contain any statements against interest made by the petitioner that could be used to impeach the petitioner at trial. Although that information might have been helpful, it cannot be said that the failure to obtain it was below the reasonable competence of criminal defense attorneys. It also was not deficient in these particular circumstances for Canning not to obtain police reports of the petitioner's prior arrests. Canning had represented the petitioner in the past and was familiar with his prior convictions. Additionally, the defense file contained a copy of the petitioner's record. As to the allegation that Canning was deficient in failing to assess the victim's credibility, the court properly rejected the petitioner's claim. Canning testified that the victim refused to speak with his investigator, that he observed her on the day

of the plea, and that she appeared "articulate, well dressed," and that he "didn't think she would break down" on the witness stand and admit that the sex was consensual as the petitioner hoped.

In a single sentence of his appellate brief, the petitioner restates his claim that Canning was deficient in failing to interview individuals who could corroborate the petitioner's claim that he was intoxicated the second time he was interviewed by the police and signed an inculpatory statement. We are not persuaded.

"Defense counsel will be deemed ineffective [for not contacting a witness] only when it is shown that a defendant has informed his attorney of the existence of the witness and that the attorney, without a reasonable investigation and without adequate explanation, failed to call the witness at trial. The reasonableness of an investigation must be evaluated not through hindsight but from the perspective of the attorney when he was conducting it." *State* v. *Talton*, 197 Conn. 280, 297–98, 497 A.2d 35 (1985); *Tatum* v. *Commissioner of Correction*, 66 Conn. App. 61, 66, 783 A.2d 1151, cert. denied, 258 Conn. 937, 785 A.2d 232 (2001).

Canning testified that the petitioner told him conflicting stories regarding the circumstances of his second statement. Canning testified that the petitioner had told him, "[o]ne, that he was sober when he made the statement, but that he made it because the police told him he would be released from incarceration if he would sign the statement. The second was, that he was drunk when he originally talked to the police." Canning also testified that the petitioner did not give him the names of any witnesses who could corroborate his intoxication story, which the petitioner disputed. As the court noted, the public defender's file contained some information supporting Canning's view. The first, a handwritten letter from Canning to the petitioner after it was clear

that the petitioner was unhappy with the decision to plead, stated, "[y]ou never told me you had been drinking prior to giving the second statement; in fact you told me that you understood everything [the state police trooper] told you and gave him the statement because it was true, and he told you that if you were truthful he would recommend a low bond." The second, a September 28, 1995 letter from the petitioner to a judge mentioned nothing about intoxication, but stated that the state police had tricked him into giving the second confession by promising that he would be released from custody if he admitted to the offense. In light of those factors and Canning's explanation, it cannot be said that he conducted an inadequate investigation.

## B

The petitioner next claims that the court improperly found that Bates' representation was not prejudicial. He argues that if Bates had prepared adequately, he would have realized that Canning did not properly prepare for trial and then presumably would have made his own independent investigation into the merits of the state's case. We are not persuaded.

At the sentencing hearing, Bates briefly presented the petitioner's claims that Canning did not allow him to review his file and then forced him to plead guilty, stating at one point, "I'm making these statements because these are what [the petitioner] told me. I have no confirming evidence of this and I have not seen the file—to know if there's anything to that effect in the file." Bates also admitted to the court that he received the file from Canning the previous day, but had not reviewed it. He did not, however, accept the court's offer for additional time so that he could do so and agreed with the court that the file probably would not contain any information supporting the petitioner's alle-

gations as to Canning's allegedly ineffective representation.

The court found that Bates' performance was deficient, concluding that he should have requested a continuance to review the file, should have read the plea transcript and should have interviewed Canning to better prepare for the sentencing hearing. The court found that the petitioner, however, had not suffered any actual prejudice.

Our own review of the record and briefs leads us to conclude that the court properly found that Bates' performance was deficient. It was below the range of competence for a criminal defense attorney in a similar circumstance not to review his client's file and to imply before a tribunal that he is not zealously advocating on the defendant's behalf. That is especially true in light of the court's offer to give Bates additional time to conduct such a review. Despite those shortcomings, the petitioner has not shown that the outcome would have been different had Bates cured his deficiencies. Bates did present the petitioner's chief complaint, that Canning essentially guaranteed that the petitioner would be found guilty if the case went to trial and that he entered an *Alford* plea as a result. The trial court denied the petitioner's motion to withdraw the plea, noting that an attorney can be "very emphatic" with a client regarding his chances before a jury. The court also reminded the petitioner about the plea canvass, in which the court found that his waiver was knowing and voluntary. The petitioner does not challenge the canvass and admitted before this court at oral argument that it was "by the book." Indeed, the petitioner failed to show a sufficient probability that a continuance and further investigation would have led the court to allow the defendant to withdraw his plea and go to trial. Furthermore, because Canning's representation was not deficient, the petitioner also has failed to show that

a further investigation would have led to a defense that would have succeeded at trial. Taken together, Bates' representation does not "undermine confidence in the outcome." *Strickland* v. *Washington*, supra, 466 U.S. 694; *Bunkley* v. *Commissioner of Correction*, supra, 222 Conn. 446.

The petitioner also briefly claims that a further investigation would have caused Bates to realize that the plea lacked a factual basis. First, our procedural rules do not require a factual basis for a court to accept an *Alford* plea.[10] *State* v. *Godek*, 182 Conn. 353, 363–64, 438 A.2d 114 (1980), cert. denied, 450 U.S. 1031, 101 S. Ct. 1741, 68 L. Ed. 2d 226 (1981).[11] Second, the state's attorney gave a factual basis during the *Alford* plea, which was based on the petitioner's second statement and which the court found to be adequate. Indeed, the petitioner has repeatedly recognized that the state had a factual basis for charging him with the crime to which he pleaded. An *Alford* plea allows the defendant to maintain his innocence while at the same time "acknowledg[ing] that the state's evidence against him is so strong that he is prepared to accept the entry of

[10] A court may nevertheless, in its discretion, require a factual basis before accepting a nolo contendere or *Alford* plea. *State* v. *Godek*, 182 Conn. 353, 365 n.13, 438 A.2d 114 (1980), cert. denied, 450 U.S. 1031, 101 S. Ct. 1741, 68 L. Ed. 2d 226 (1981).

[11] Although *State* v. *Godek*, supra, 182 Conn. 363–64, dealt with a plea of nolo contendere, it addressed the issue of whether the Practice Book provisions regarding pleas apply only to pleas of guilty or to those in which the defendant does not admit to the crime. Concluding that those provisions apply only when the defendant admits guilt, the *Godek* court used the language and reasoning set forth in *North Carolina* v. *Alford*, supra, 400 U.S. 25. *State* v. *Godek*, supra, 363–64. Our Supreme Court also has noted that the United States Supreme Court has treated *Alford* pleas and pleas of nolo contendere as the "functional equivalent" of one another. *State* v. *Palmer*, 196 Conn. 157, 169 n.3, 491 A.2d 1075 (1985). We have stated previously that the two are functionally equivalent. See, e.g., *State* v. *Banks*, 24 Conn. App. 408, 412, 588 A.2d 669 (1991); *State* v. *Pena*, 16 Conn. App. 518, 533, 548 A.2d 445, cert. denied, 209 Conn. 830, 552 A.2d 1217 (1988). As a result, the rationale in *Godek* that a factual basis is not required for *Alford* pleas applies.

a guilty plea." *Henry* v. *Commissioner of Correction,*
60 Conn. App. 313, 315 n.1, 759 A.2d 118 (2000); see
also *State* v. *Palmer,* 196 Conn. 157, 169 n.3, 491 A.2d
1075 (1985). Additionally, he did not challenge the fac-
tual basis during his attempted plea withdrawal. Finally,
at oral argument before this court, the petitioner con-
ceded that the state had provided a factual basis.

## II

The petitioner combines his final two claims that the
habeas court improperly applied Practice Book § 39-27[12]
(4) and (5). First, he argues that the court improperly
concluded that the *Strickland-Hill* standard applied
when analyzing his claim that the trial court wrongfully
rejected his attempt to withdraw his guilty plea on the
basis of ineffective assistance of counsel under Practice
Book § 39-27 (4). Second, he claims that he should be
granted a de novo hearing and trial to challenge his
guilty plea because he believes that his plea lacked a
factual basis, which he believes is required by Practice
Book § 39-27 (5). We are not persuaded.

When a defendant moves to withdraw a guilty plea
after it has been accepted but before sentencing, a court
is obligated to allow the motion upon proof of one of
the grounds provided in Practice Book § 39-27. Practice
Book § 39-26; *State* v. *Johnson,* 253 Conn. 1, 49–50, 751
A.2d 298 (2000). The petitioner argues that the habeas
court improperly applied *Strickland-Hill*'s prejudice
prong to his claim under Practice Book § 39-27 (4) that
he should have been allowed to withdraw his plea
because of Bates' ineffective representation. He asks
that we apply instead "an appellate review standard,"

---

[12] Because the numbering of the applicable Practice Book provisions
changed with the 1998 revision of the Practice Book but the language of
those provisions did not, we refer to former Practice Book § 720 as § 39-
26 and to former Practice Book § 721 as § 39-27.

which he apparently assumes does not include a prejudice prong.

The *Strickland-Hill* standard *is* the appellate standard of review for ineffective counsel claims raised on a direct appeal. See *State* v. *Turner*, 67 Conn. App. 708, 712–13, 789 A.2d 1058 (2002). Although our phrasing of the prejudice prong has not been uniform in previous instances where a party has claimed ineffective assistance on direct appeal; compare, e.g., *State* v. *Gray*, 63 Conn. App. 151, 161–62, 772 A.2d 747, cert. denied, 256 Conn. 934, 776 A.2d 1151 (2001), with *State* v. *Louise-Julie*, 60 Conn. App. 837, 840, 762 A.2d 913 (2000), cert. denied, 255 Conn. 929, 930, 767 A.2d 102, 103 (2001); the prejudice prong has always existed in that the appellant has the burden of showing that there is a reasonable probability that but for counsel's ineffective assistance, the result would have been different. Furthermore, our Supreme Court has stated that the standard and analysis for ineffective assistance of counsel claims is the same regardless of whether they are raised in a habeas corpus petition or on direct appeal. *State* v. *Webb*, 238 Conn. 389, 422 n.30, 680 A.2d 147 (1996). Accordingly, the petitioner's ineffective assistance claim based on Practice Book § 39-27 (4) fails because he did not show that Canning's representation fell below the objective standard of reasonableness or that he would not have pleaded guilty had Bates' representation been effective.

The petitioner's claim that the state's case lacked a factual basis in contravention of Practice Book § 39-27 (5) seems actually to be a freestanding claim of innocence.[13] Although the state correctly points out that the petitioner did not raise a claim of actual innocence separately in his second amended habeas petition, he has continuously attempted to profess his innocence

[13] We previously concluded in part I B that the state did provide a factual basis to support the plea.

through his physical actions and in several letters to the courts, and his claim of actual innocence is the basis of his ineffective assistance claim against Canning. Cf. *Holley* v. *Commissioner of Correction*, 62 Conn. App. 170, 182, 774 A.2d 148 (2001) (declining to consider claim of actual innocence where "[n]owhere in [habeas] petitions does the petitioner allege that his trial counsel was ineffective for failing to advance a defense . . . that he was innocent as a matter of law"). Because the petitioner failed to meet his burden to show that he is actually innocent, however, he cannot prevail on a claim of actual innocence.

Even without an underlying constitutional violation that affected the result of his criminal trial, "a substantial claim of actual innocence is cognizable by way of a petition for a writ of habeas corpus . . . ." *Summerville* v. *Warden*, 229 Conn. 397, 422, 641 A.2d 1356 (1994). To prevail, a petitioner must satisfy two criteria. "First, [he] must establish by clear and convincing evidence that, taking into account all of the evidence—both the evidence adduced at the original criminal trial and the evidence adduced at the habeas corpus trial—he is actually innocent of the crime of which he stands convicted. Second, [he] must also establish that, after considering all of that evidence and the inferences drawn therefrom as the habeas court did, no reasonable fact finder would find the petitioner guilty of the crime." *Miller* v. *Commissioner of Correction*, 242 Conn. 745, 747, 700 A.2d 1108 (1997). It is an open question whether a habeas claim of actual innocence must be based on new evidence. *Clarke* v. *Commissioner of Correction*, 249 Conn. 350, 358, 732 A.2d 754 (1999); *Miller* v. *Commissioner of Correction*, supra, 789–90 n.29.

Despite his claims of innocence, the petitioner failed to introduce any evidence before the habeas court that we would be able to review. The mere fact that the petitioner may not have infected the victim with a sexu-

ally transmitted disease does not address whether the intercourse was consensual and, thus, is not the talisman he believes it to be. In addition to the lack of evidence that the petitioner produced, a reasonable fact finder could find that the petitioner committed the offense for the reasons discussed regarding the existence of a factual basis for the charge to which he pleaded. Accordingly, we conclude that the petitioner did not satisfy either part of the test required to show actual innocence.

The judgment is affirmed.

In this opinion the other judges concurred.

