[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
The petitioner, Darnell Tatem, alleges in his petition for a Writ of Habeas Corpus originally filed with the Court on July 6, 1998, and amended on August 20, 1999, that he was denied the effective assistance of counsel at the trial level in violation of the Sixth andFourteenth
Amendments to the United States Constitution as well as Article I, Section 8 of the Constitution of the state of Connecticut. For the reasons set forth more fully below, the petition shall be denied.
The claim of ineffective assistance of counsel alleges three specific ways in which the petitioner's trial defense counsel was deficient. First, the petitioner asserts that the trial counsel failed to file and argue any pretrial motions directed to the admissibility and sufficiency of the evidence. Second, the petitioner complains that the trial counsel failed to adequately investigate the facts and obtain statements of exculpatory witnesses. Finally, he alleges that his trial counsel failed to conduct discovery of statements, reports and other documents that the petitioner was entitled to receive and review.
This matter came on for trial before the Court on December 16, 2002. The petitioner and his trial defense counsel, Attorney Christian Bujdud, were the only witnesses who testified at the trial. In addition, the Court received a transcript of the petitioner's April 7, 1998 plea and sentencing before Judge Eddie Rodriquez into evidence. The Court has reviewed all of the testimony and evidence and makes the following findings of fact.
 Findings of Fact
1. The petitioner was the defendant in the criminal case of State vs. Tatem, Docket Number CR97-0079668 tried in the Judicial District of Stamford/Norwalk where he was charged by information of having committed various narcotics offenses in violation of Chapter 21 a of the Connecticut General Statutes. CT Page 16555
 2. The petitioner was represented throughout all of the proceedings in this matter by Attorney Christian Bujdud, a private practitioner appointed as a special public defender for this case,
 3. On April 7, 1998, the petitioner and his counsel reached a pretrial agreement with the state whereby the petitioner would enter a plea of guilty, under the Alford doctrine, to two counts of illegal possession of drug paraphernalia in violation of C.G.S. § 21a-267a in exchange for which the state would enter a nolle as to all other outstanding charges and recommend a total effective sentence of six months to serve.
 4. The trial court, Rodriquez, J., conducted an inquiry into the voluntariness and providence of the petitioner's plea. During this inquiry, the state's attorney presented a brief explanation of the facts surrounding the arrest of the petitioner and the basis for the charges.
 5. Prior to accepting the petitioner's plea and entering a finding of guilty, the Court inquired if the petitioner had had sufficient time in which to consult with his attorney, whether he was satisfied with his lawyer's representation, and whether he wished to waive his rights to a jury trial, to confront and cross-examine his accusers and present defenses. The petitioner answered in the affirmative.
 6. Thereafter, the petitioner was convicted of the charged offenses in accordance with his plea and sentenced to the agreed upon sentence.
 7. The events that gave rise to this conviction took place on December 5, 1997 in the city of Norwalk, Connecticut. The petitioner had been released from prison the day before the arrest and on the day of his arrest, was in the process of taking up residence at an apartment at 261 Ely Avenue, Building 15, Apartment 3B in the city of Norwalk, Connecticut.
 8. The apartment was also the residence of a Carolyn Stadford who was suspected of selling and distributing drugs out of that apartment.
9. On December 5, 1997, the city of Norwalk Police Department arrived at the apartment to execute a search warrant. At the time, the petitioner, Ms Stadford, Ms. Christine Hargrove, Mr. Stephen Robinson, and Ms. Stadford's two young children occupied the apartment. CT Page 16556
 10. The petitioner was in the process of exiting the bathroom, having finished cleaning up.
 11. The search of the apartment revealed the presence of a bag of heroin in the living room, and at divers locations throughout the apartment, seven bags of cocaine and heroin and assorted drug paraphernalia, straws, rolling papers, a homemade crack pipe and a pouch.
 12. The petitioner, along with the other adult residents of the apartment was arrested and charged with various narcotics violations.
 13. The petitioner was unable to make bail and remained in pretrial confinement from December 5, 1997 through the date of his plea on April 7, 1998.
 14. The petitioner has had several prior felony convictions, including: Sexual Assault in the First Degree, Escape from custody, and Larceny in the First Degree.
 15. Attorney Christian Bujdud who had been admitted to practice here in Connecticut in 1991 represented the petitioner. The petitioner met with his lawyer for a total of one hour, broken up into four 15-minute meetings.
 16. Attorney Bujdud did not speak with either Mr. Robinson or Ms Stadford, before negotiating a plea agreement and recommending that the petitioner accept it.
 Discussion of Law
Any claim of ineffective assistance of counsel must satisfy both prongs of the test set forth by the United States Supreme Court in Strickland vs. Washington, 466 U.S. 688, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh. denied467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d (1984) before the Court can grant relief. Specifically, the petitioner must first show "that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, infra at 687. If, and only if, the petitioner manages to get over the first hurdle, then the petitioner must clear the second obstacle by proving "that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant CT Page 16557 makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, infra at 687. In short, the petitioner must show both deficiency and prejudice. A failure to prove both, even though counsel's trial performance may have been substandard, will result in denial of the petition.
"Although Strickland applies generally to the evaluation of whether ineffective assistance of counsel during criminal proceedings has infringed on a petitioner's constitutional rights, the United States Supreme Court has articulated a modified prejudice standard for cases in which the conviction has resulted from a guilty plea. See Hill vs. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Hill requires the petitioner to demonstrate that he would not have pleaded guilty, that he would have insisted on going to trial and that the evidence that had been undiscovered or the defenses he claims should have been introduced were likely to have been successful at trial." Copas vs. Commissioner 234 Conn. 139, at 151 (1995). Given this modified standard to be applied to plea cases, the petitioner must first prove that the performance by his trial defense counsel was deficient and, that absent this deficient performance, the petitioner would have pled not guilty, would have gone to trial, and been acquitted.
Trial in this Court of a habeas petition is not an opportunity for a new counsel to attempt to re-litigate a case in a different manner. It is indisputable fact that many times if one had foreknowledge of certain events; different courses might well have been taken. Likewise, a habeas court knowing the outcome of the trial "may not indulge in hindsight to reconstruct the circumstances surrounding the challenged conduct, but must evaluate the acts or omissions from trial counsel's perspective at the time of trial." Beasley vs. Commisioner of Corrections,47 Conn. App. 253 at 264 (1979), cert. den. 243 Conn. 967 (1998). "A fair assessment of an attorney's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances to counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Henry vs. Commissioner of Correction, 60 Conn. App. 313 at 317 (2000).
It is not necessary to consider whether a trial counsel's performance was deficient if the habeas Court is satisfied that there was no prejudice to the defendant by the actions of the trial counsel in representing the petitioner. "A reviewing court can find against a CT Page 16558 petitioner on either ground, whichever is easier. Strickland v. Washington, supra, 697; see Nardini v. Manson, 207 Conn. 118, 124,540 A.2d 69 (1988) (`[a] court deciding an ineffective assistance of counsel claim need not address the question of counsel's performance, if it is easier to dispose of the claim on the ground of insufficient prejudice')" Valeriano vs. Bronson, 209 Conn. 75 at 86 (1988).
It is upon this second shoal, the lack of prejudice resulting from the trial defense counsel's deficient performance, that the petitioner's vessel ultimately runs aground. While it is likely that there are many ways in which Attorney Bujdud could have provided a better quality of representation to the petitioner, it is highly probable that even had he done so, that the petitioner would still have pled guilty. "[G]uilt, or the degree of guilt, is at times uncertain and elusive, an accused, though believing in or entertaining doubts respecting his innocence, might reasonably conclude a jury would be convinced of his guilt and that he would fare better in the sentence by pleading guilty. McCoy vs. United States, 124 U.S. App. D.C. 177, 179, 363 F.2d 306, 308 (1966)." See North Carolina vs. Alford, 400 U.S. 25 at 33 (1970).
In the instant case, the petitioner was charged with numerous narcotics violations that would have, had he been convicted on all charges, exposed him to a sentence of nine and one half years in prison. He had already spent over five months in pretrial confinement due to his inability to make bail. While it is true that the inculpatory evidence is minimal, the petitioner's past felony record would have made it exceedingly difficult, if not nigh unto impossible, for him to take the stand in his own defense. Additionally, there is some conflicted evidence of consciousness of guilt to the effect that upon being directed by the police to stay where he was, the petitioner instead fled into another room.[1]
Maintaining a not guilty plea could have entailed a delay of up to an additional six months before the case was actually brought to trial. It is clearly understandable then why the petitioner would have made the voluntary decision to plead guilty under the Alford doctrine in order to minimize his potential exposure and obtain a quick release from confinement.[2] "Reasons other than the fact that he is guilty may induce a defendant to so plead . . . [and he] must be permitted to judge for himself in this respect. State vs.. Kaufman, 51 Iowa 578, 580,2 N.W. 275, 276 (1879)." See North Carolina vs. Alford, 400 U.S. 25 at 33 (1970). By making the pragmatic decision to plead guilty, even though he may have believed himself to have been innocent, the petitioner obtained a release from confinement no later than May 5, 1997, avoided a potential nine and a half year prison sentence, and, at a minimum, prevented an additional six months of pretrial confinement awaiting a jury trial that under the best of scenarios might have resulted in his acquittal and CT Page 16559 release at that point.
The ultimate decision as to whether a criminal defendant pleads guilty or pleads not guilty rests with the individual charged with the crime. A criminal defendant has a Constitutional right to persist in a plea of not guilty, even in the face of seemingly insurmountable obstacles. It is not, and never has been, for the trial defense counsel to decide the plea that his client should enter. However, "[b]ecause a defendant often relies heavily on counsel's independent evaluation of the charges and defenses, the `right to effective assistance of counsel includes an adequate investigation of the case to determine facts relevant to the merits or to the punishment in the event of conviction.' Copas vs. Commissioner of Correction, 234 Conn. 139, 154 (1995)." See Baillargeon vs. Commissioner of Correction, 67 Conn. App. 716 at 721 (2002). Consequently, an attorney who fails to conduct an adequate investigation may well be providing ineffective representation.
In the instant case, it is clear that Attorney Bujdud did not do all that he could have done to represent his client's interests. He did not conduct any sort of an independent evaluation of the incident although he did examine the documents contained within the state's attorney file.[3]
He did not interview any of the other persons in the apartment. He did ask the Public Defender's investigator to interview the other arrestees, but never followed up when he did not receive any report back from the investigator. In light of the failure of the regularly assigned public defender investigator to provide adequate support, Attorney Bujdud should have pursued the employment of a special investigator, however, he failed to do so. Moreover, while the petitioner had filed his own Motion to Dismiss for insufficient evidence, Attorney Bujdud refused to follow up on that motion because he had not adequately investigated whether there was any merit to the motion or not. Indeed, Attorney Bujdud was unaware of the results of any of the co-defendant's cases.
Attorney Bujdud did, however, negotiate a favorable plea bargain for his client, "To satisfy the prejudice prong, the petitioner must show a `reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Baillargeon vs. Commissioner of Correction, 67 Conn. App. 716 at 722 (2002). Here, despite the possibility of his being innocent of the charges for which he was arrested, the petitioner made the conscious decision to elect to take the pragmatic approach of pleading guilty under the Alford doctrine in order that he could get out of jail. From his testimony at the habeas trial it is clear that the petitioner would have done anything necessary in order to get out of jail. In that sense, then, the petitioner made the voluntary decision to take that course rather than to insist upon a not CT Page 16560 guilty plea and a trial on the merits. "In determining the validity of a plea, `[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' North Carolina vs. Alford, 400 U.S. 25, 3191 S.Ct. 160, 27 L.Ed.2d 162 (1970)." State vs. Parker, 67 Conn. App. 351 at 354 (2001). Rather than prove that, but for his trial defense counsel's inadequate performance, the petitioner would have elected to plead not guilty and taken the case to trial, his own testimony confirms that the petitioner did make a voluntary and intelligent choice to plead guilty and avoid The potential of a nine and a half year sentence. It is indeed unfortunate that this petitioner found himself in the position whereby he was forced to make this Hobson's Choice,[4] but it was his own actions in amassing a record of felony convictions, along with a conviction for Escape that undoubtedly made him a poor risk for bail
As regards the three specific claims of the petitioner, the evidence does support the inadequacy of Attorney Bujdud's representation. Notwithstanding, however, the petitioner did not suffer any prejudice as a result of any of the challenged actions or omissions of the trial counsel. Even in the face of deficient performance, the petitioner must still show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, infra at 694. Given the petitioner's voluntary and intelligent choice to plead guilty, this Court will deny the petition for habeas corpus.
Accordingly, the Petition for a Writ of Habeas Corpus is denied.
 ___________________ S.T. Fuger, Jr., Judge