[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner, David Quinones, alleges in his petition for a Writ of Habeas Corpus originally filed with the Court on June 25, 1999, and amended on January 8, 2001, that he was denied the effective assistance of counsel at the trial level in violation of the Sixth and
Fourteenth Amendments to the United States Constitution as well as Article I, Section 8 of the Constitution of the state of Connecticut. He further alleges that at the time he entered his plea of guilty at the trial level that he was not competent and that his plea was not knowing, intelligent, and voluntary. For the reasons set forth more fully below, the petition shall be denied.
The claim of ineffective assistance of counsel alleges four specific ways in which the petitioner's trial defense counsel was deficient. First, the petitioner asserts that the trial counsel failed to adequately advise the petitioner concerning his options in deciding whether to enter a guilty plea or proceed to trial. Second, the petitioner complains that the trial counsel failed to adequately advise the petitioner concerning his options in regard to potential defenses. Third, the petitioner asserts that his counsel did not advise the petitioner concerning the consequences of his guilty plea. Finally, he alleges that his trial counsel failed to ensure that the petitioner's plea was knowing, intelligent, and voluntary.
This matter came on for trial before the Court on December 18, 2002 and again on February 3, 2003. The petitioner and his trial defense counsel, Attorney Glenn Falk, were the only witnesses who testified at the trial. In addition, the Court received a transcript of the petitioner's May 20, 1998 plea and sentencing before Judge Gary White, a letter that the petitioner sent to the trial judge, and a March 18, 1998 Competency Evaluation of the petitioner into evidence. The Court has reviewed all of the testimony and evidence and makes the following findings of fact. CT Page 2099
Findings of Fact
1. The petitioner was the defendant in a criminal case, Docket Number CR97-0460646, pending in the Superior Court, GA #6, Judicial District of New Haven in which he was charged with Larceny in the second degree.
2. The petitioner was also on a probation that the state alleged he had violated in Docket No. CR6-358376 in which he owed two years.
3. Attorney Glenn Falk, a special public defender, represented the petitioner throughout all of the proceedings in this matter.
4. Pursuant to an order of the Court, the petitioner was examined under the authority of CGS § 54-56d to determine his competency to stand trial.
5. In connection with this examination, the petitioner was committed to the Connecticut Valley Hospital on February 24, 1998 for examination by a properly constituted Evaluation Team.
6. On March 18, 1998, the Team made its report containing unanimous findings that while the petitioner may have an anti-social personality disorder, he was competent to stand trial in the matter.
7. Attorney Falk conducted a proper investigation into the facts of the cases in which the petitioner was charged. He reviewed the police reports and materials in the prosecutor's files and met with his client, the petitioner, several times throughout the period prior to the plea.
8. The initial charges facing the petitioner were Robbery in the First Degree, Conspiracy to commit Robbery in the First degree, Larceny in the second degree and conspiracy to commit larceny in the 2nd degree.[1]
9. Attorney Falk negotiated a pretrial agreement with the state that called for the petitioner to plead guilty to one count of larceny in the 2nd degree and to admit the violation of probation. In return, the state would nolle the open charges and the petitioner would be sentenced to a total effective sentence of seven years, suspended after the service of eighteen months to be followed by three years of probation.
10. Attorney Falk advised his client to accept this pretrial offer because it appeared as if the state had a good case on the pending criminal charges and that if convicted, he stood to have at least a two year sentence for the Violation of Probation alone. CT Page 2100
11. On May 20, 1998, the petitioner accepted this plea agreement, pleaded guilty and the trial court, White, J., conducted an inquiry into the voluntariness and providence of the petitioner's plea. The petitioner entered his plea under the Alford doctrine and in so doing conceded that, even though he might not agree with all of the facts alleged by the prosecutor, the state had sufficient evidence to obtain a convict. The Court specifically found a factual basis for the charges to which he was pleading.
12. Prior to accepting the petitioner's plea and entering a finding of guilty, the Court inquired if the petitioner had had sufficient time in which to consult with his attorney, whether he was satisfied with his lawyer's representation, and whether he wished to waive his rights to a jury trial, to confront and cross-examine his accusers and present defenses. The petitioner answered in the affirmative.
13. Thereafter, the petitioner was convicted of the charged offenses in accordance with his plea and sentenced to the agreed upon sentence.
Discussion of Law
Any claim of ineffective assistance of counsel must satisfy both prongs of the test set forth by the United States Supreme Court in Stricklandv. Washington, 466 U.S. 688, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh. denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d (1984), before the Court can grant relief. Specifically, the petitioner must first show "that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland,infra at 687. If, and only if, the petitioner manages to get over the first hurdle, then the petitioner must clear the second obstacle by proving "that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, infra at 687. In short, the petitioner must show both deficiency and prejudice. A failure to prove both, even though counsel's trial performance may have been substandard, will result in denial of the petition.
"Although Strickland applies generally to the evaluation of whether ineffective assistance of counsel during criminal proceedings has infringed on a petitioner's constitutional rights, the United States Supreme Court has articulated a modified prejudice standard for cases in CT Page 2101 which the conviction has resulted from a guilty plea. See Hill v.Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Hill
requires the petitioner to demonstrate that he would not have pleaded guilty, that he would have insisted on going to trial and that the evidence that had been undiscovered or the defenses he claims should have been introduced were likely to have been successful at trial." Copas v.Commissioner, 234 Conn. 139, at 151 (1995). Given this modified standard to be applied to plea cases, the petitioner must first prove that the performance by his trial defense counsel was deficient and, that absent this deficient performance, the petitioner would have pled not guilty, would have gone to trial, and been acquitted.
Trial in this Court of a habeas petition is not an opportunity for a new counsel to attempt to re-litigate a case in a different manner. It is an indisputable fact that many times if one had foreknowledge of certain events, different courses might well have been taken. Likewise, a habeas court knowing the outcome of the trial "may not indulge in hindsight to reconstruct the circumstances surrounding the challenged conduct, but must evaluate the acts or omissions from trial counsel's perspective at the time of trial." Beasley v. Commissioner of Corrections,47 Conn. App. 253 at 264 (1979), cert. den., 243 Conn. 967 (1998). "A fair assessment of an attorney's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances to counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Henry v. Commissioner ofCorrection, 60 Conn. App. 313 at 317 (2000).
It is not necessary to consider whether a trial counsel's performance was deficient if the habeas Court is satisfied that there was no prejudice to the defendant by the actions of the trial counsel in representing the petitioner. "A reviewing court can find against a petitioner on either ground, whichever is easier. Strickland v.Washington, supra, 697; see Nardini v. Manson, 207 Conn. 118, 124,540 A.2d 69 (1988) ('[a] court deciding an ineffective assistance of counsel claim need not address the question of counsel's performance, if it is easier to dispose of the claim on the ground of insufficient prejudice')." Valeriano v. Bronson, 209 Conn. 75 at 86 (1988).
It is upon this second shoal, the lack of prejudice resulting from the trial defense counsel's deficient performance, that the petitioner's vessel ultimately runs aground. While it is possible that the petitioner could have been acquitted of all charges at trial, that appeared to be CT Page 2102 highly problematic. The petitioner had substantial exposure for a lengthy sentence and Attorney Falk correctly advised him that his best course of action was to accept the plea agreement and plead guilty. "[G]uilt, or the degree of guilt, is at times uncertain and elusive, an accused, though believing in or entertaining doubts respecting his innocence, might reasonably conclude a jury would be convinced of his guilt and that he would fare better in the sentence by pleading guilty. McCoy v.United States, 124 U.S.App.D.C. 177, 179, 363 F.2d 306, 308 (1966)." See NorthCarolina v. Alford, 400 U.S. 25 at 33 (1970).
In the instant case, the petitioner was charged with serious crimes and a violation of probation that could have, had he been convicted on all charges, exposed him to a lengthy sentence of sixty-two years in prison. It is clearly understandable then why the petitioner would have made the voluntary decision to plead guilty under the Alford doctrine in order to minimize his potential exposure and obtain an earlier release from confinement. "Reasons other than the fact that he is guilty may induce a defendant to so plead . . . [and he] must be permitted to judge for himself in this respect. State v. Kaufman, 51 Iowa 578, 580, 2 N.W. 275,276 (1879)." See North Carolina v. Alford, 400 U.S. 25 at 33 (1970). By making the pragmatic decision to plead guilty, even though he may have believed himself to have been innocent, the petitioner obtained a sentence limited to six years and avoided a potential prison sentence that would have been the functional equivalent of imprisonment for the rest of his life.
The ultimate decision as to whether a criminal defendant pleads guilty or pleads not guilty rests with the individual charged with the crime. A criminal defendant has a Constitutional right to persist in a plea of not guilty, even in the face of seemingly insurmountable obstacles. It is not, and never has been, for the trial defense counsel to decide the plea that his client should enter. However, "[b]ecause a defendant often relies heavily on counsel's independent evaluation of the charges and defenses, the `right to effective assistance of counsel includes an adequate investigation of the case to determine facts relevant to the merits or to the punishment in the event of conviction.' Copas v.Commissioner of Correction, 234 Conn. 139, 154 (1995)." See Baillargeonv. Commissioner of Correction, 67 Conn. App. 716 at 721 (2002). Consequently, an attorney who fails to conduct an adequate investigation may well be providing ineffective representation.
In the instant case, it is clear that Attorney Falk did an adequate job of pretrial investigation. He did meet with his client several times, as well as review the police reports and other documents contained within the prosecutor's file. While there are many other preparations that CT Page 2103 Attorney Falk could have made, including interviewing witnesses, investigating crime scenes, etc., given the petitioner's exposure, the negotiation of a pretrial agreement was prudent.
Attorney Falk did negotiate a favorable plea bargain for his client, "To satisfy the prejudice prong, the petitioner must show a `reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Baillargeon v.Commissioner of Correction, 67 Conn. App. 716 at 722 (2002). Here, despite the possibility of his being innocent of one or more of the charges, the petitioner made the conscious decision to elect to take the pragmatic approach of pleading guilty under the Alford doctrine in order to minimize his potential exposure and sentence. The petitioner made the voluntary decision to take that course rather than to insist upon a not guilty plea and a trial on the merits. "In determining the validity of a plea, `[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' North Carolina v. Alford 400 U.S. 25, 3191 S.Ct. 160, 27 L.Ed.2d 162 (1970)." State v. Parker,67 Conn. App. 351 at 354 (2001).
As regards the specific claims of the petitioner, the evidence does not support the inadequacy of Attorney Falk's representation. Attorney Falk carefully explained the situation in which the petitioner found himself. He was facing some serious charges that would, more likely than not, result in a heavy prison sentence if convicted. In addition, he was facing a violation of probation that would have required the petitioner to serve more than the agreed upon eighteen months. Given the lower standard of proof attendant to a violation of probation hearing, there was a high likelihood of the state proving the violation. As regards the issue of the petitioner's competence, there is no evidence in the record, other than the self-serving testimony of the petitioner, to support that he did not fully understand what was going on when he entered his guilty plea. Indeed, there is evidence to the contrary, both in the transcript of the plea canvass and the report of the competency evaluation. Finally, while Attorney Falk is not a medical professional, he did testify that the petitioner never seemed to be anything other than clear-headed in his dealings with him.
Moreover, the petitioner did not suffer any prejudice as a result of any of the challenged actions or omissions of the trial counsel. Even had there been deficient performance, the petitioner must still show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine CT Page 2104 confidence in the outcome." Strickland, infra at 694. While it may well be true that the petitioner did not like the choices with which he was confronted, it is clear that the solution to his legal problems that he chose was volitional. Given the petitioner's knowing, voluntary and intelligent choice to plead guilty, this Court will deny the petition for habeas corpus.
Accordingly, the Petition for a Writ of Habeas Corpus is denied.
S.T. Fuger, Jr., Judge