## FRANKIE TRIMMER *v.* COMMISSIONER OF CORRECTION
### (AC 29539)

Harper, Lavine and Pellegrino, Js.

---

Argued December 1, 2009—officially released March 2, 2010

*Mark M. Rembish,* special public defender, for the appellant (petitioner).

*Raheem L. Mullins,* assistant state's attorney, with whom, on the brief, were *Gail P. Hardy,* state's attorney, *Courtney Gates-Graceson,* assistant state's attorney, and *Michael E. O'Hare,* supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

PELLEGRINO, J. The petitioner, Frankie Trimmer, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. The petitioner claims that the court improperly concluded that his trial counsel provided effective assistance. We reject the petitioner's claim and affirm the judgment of the habeas court.

The petitioner was charged with various offenses in multiple dockets, including attempt to commit murder in violation of General Statutes §§ 53a-54a and 53a-49 (a) (2), assault in the first degree with a deadly weapon in violation of General Statutes §§ 53a-59 (a) (1) and 53-202k, criminal possession of a pistol or revolver in

violation of General Statutes § 53a-217c (a) (1), violation of probation pursuant to General Statutes § 53a-32, two counts of tampering with a witness in violation of General Statutes § 53a-151 and two counts of witness bribery in violation of General Statutes § 53a-149.

The following facts and procedural history are relevant to our disposition of the petitioner's appeal. On March 11, 2001, at approximately 4:55 p.m. in the city of Hartford, the petitioner and his friend, Alvin Wilson, were arguing on a street corner when the victim, Wayne Tripp, came upon the scene. The victim said something to the petitioner, who then approached Tripp and, at close range, shot the victim in the leg, fracturing his femur and causing serious injuries.

The petitioner elected to have a trial by jury, and trial commenced on June 7, 2002. He was represented by attorney M. Fred DeCaprio throughout the criminal proceedings. On the second day of trial, the state produced evidence that the petitioner had conspired to prevent the victim from testifying. The evidence included two letters and three audiotapes containing conversations between the petitioner and Kendall Bozeman, among others. In the letters and tapes, the petitioner indicated his desire to keep the victim from testifying and his willingness to pay the victim to keep quiet. At trial, the state used this evidence to demonstrate the petitioner's consciousness of guilt.

After introducing this evidence, the state rested its case and offered the petitioner a plea deal that required him to plead guilty to assault in the first degree, criminal possession of a firearm and violation of probation, and to agree to plead guilty to the forthcoming charges of witness tampering and attempted witness bribery. In exchange, the state offered the petitioner a total effective sentence on all charges of fifteen years incarceration, with eight years of special parole.[1]

---

[1] The record does not indicate whether the state put a time limit on its plea offer.

According to DeCaprio, the petitioner's trial was proceeding well until the state produced the consciousness of guilt evidence. DeCaprio informed the petitioner that the evidence would have a serious impact on his chance of receiving a positive outcome at trial and advised the petitioner to accept the state's plea offer, which included a resolution of the tampering charges.[2] DeCaprio also discussed the development in the case with the petitioner's mother, who in turn spoke to the petitioner.

On June 12, 2002, the petitioner pleaded guilty to assault in the first degree, criminal possession of a pistol or firearm and violation of probation. On September 6, 2002, the petitioner pleaded guilty to conspiracy to tamper with a witness, tampering with a witness and conspiracy to commit bribery. Pursuant to the plea agreement, the trial court imposed a total effective sentence of fifteen years incarceration to be followed by eight years of special parole. The petitioner did not move to withdraw his guilty pleas or file a direct appeal.

On July 8, 2005, the petitioner filed a petition for a writ of habeas corpus, which was followed by an evidentiary hearing.[3] The petitioner asserted that he had told DeCaprio that Alvin Wilson shot Tripp. According to the petitioner, an eyewitness named Germaine Syms would have verified this claim, but DeCaprio decided not to call Syms as a witness because Syms had told DeCaprio's investigator that he did not see anything during the incident. At the habeas trial, Syms testified that he had spoken to an investigator about the shooting but that he did not give the investigator any information. In his testimony at the hearing, however, he confirmed

[2] The petitioner's maximum exposure on all the charges to which he pleaded guilty was forty-nine years.

[3] The petitioner claimed that counsel failed (1) to investigate adequately, (2) to give the petitioner copies of police reports, (3) to call two witnesses for the defense, (4) to prepare for trial adequately and (5) to allow the petitioner to make a decision about his plea free from undue pressure.

the petitioner's claim that Tripp was shot by Wilson and stated that he did not see the petitioner with a gun at any point during the incident. In its memorandum of decision, the court specifically stated that it did not find Syms' testimony entirely credible. The petitioner also claimed that DeCaprio did not adequately attempt to find Bozeman in order to have him testify to rebut the state's consciousness of guilt evidence.

On December 14, 2007, the court issued its memorandum of decision rejecting the petitioner's claims. The court reasoned that "[b]ased on the evidence presented, there is absolutely no indication that DeCaprio provided ineffective assistance to the petitioner. It is clear that the petitioner was actively involved in his defense. At the criminal trial, DeCaprio conducted an effective cross-examination of the victim's testimony. DeCaprio investigated Syms and Bozeman as potential witnesses for the defense; however, Syms proved to be unhelpful to the petitioner's case and Bozeman could not be located. Moreover, DeCaprio's advice to plead guilty was entirely reasonable due to the likely effect of the consciousness of guilt evidence. The petitioner ended up with a rather good deal overall. Had the petitioner proceeded to trial, he faced a total exposure of forty-nine years incarceration." After the court granted the petitioner's petition for certification to appeal, this appeal followed.

We begin by setting forth our standard of review. "In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Mock* v. *Commissioner of Correction*, 115 Conn. App. 99, 103–104, 971 A.2d 802, cert. denied, 293 Conn. 918, 979 A.2d 490 (2009).

"A habeas petitioner can prevail on a constitutional claim of ineffective assistance of counsel [only if he can] establish both (1) deficient performance, and (2) actual prejudice. . . . For ineffectiveness claims resulting from guilty verdicts, we apply the two-pronged standard set forth in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Levine* v. *Manson*, 195 Conn. 636, 639–40, 490 A.2d 82 (1985). For ineffectiveness claims resulting from guilty pleas, we apply the standard set forth in *Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), which modified *Strickland*'s prejudice prong." (Citations omitted; internal quotation marks omitted.) *Baillargeon* v. *Commissioner of Correction*, 67 Conn. App. 716, 721, 789 A.2d 1046 (2002). Therefore, because the petitioner accepted his trial counsel's advice to plead guilty, to prevail on the ineffective assistance of counsel claim, the petitioner had the burden of (1) demonstrating that the advice was not within the range of competence demanded of attorneys in criminal cases and (2) showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (Internal quotation marks omitted.) Id., 722.

"To satisfy the performance prong, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. . . . A petitioner who accepts counsel's advice to plead guilty has the burden of demonstrating on habeas appeal that the advice was not within the range of competence demanded of attorneys in criminal cases. . . . The range of competence demanded is reasonably competent, or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . Reasonably competent attorneys may advise their clients to plead guilty even if defenses exist. . . . A reviewing court must view counsel's conduct with a

strong presumption that it falls within the wide range of reasonable professional assistance and that a tactic that appears ineffective in hindsight may have been sound trial strategy at the time." (Citations omitted; internal quotation marks omitted.) Id., 721–22. In light of the damaging evidence of witness tampering and bribery, and with the exposure to a forty-nine year sentence, we conclude, as did the habeas court, that DeCaprio's advice to accept the plea agreement was "entirely reasonable . . . ."

The petitioner also alleges that DeCaprio's representation was ineffective in a number of other ways.[4] After considering the parties' written and oral arguments to this court, and our own review of the record and transcript, we conclude that there is no indication in the record that DeCaprio's performance was deficient; to the contrary, all indications are that he provided the petitioner with a careful and competent defense. We agree with the factual findings contained within the habeas court's thoughtful and detailed memorandum of decision. The court found that DeCaprio adequately investigated the shooting and considered all potential witnesses, including Bozeman,[5] provided the petitioner with the necessary materials to allow him to participate in his own defense and acted reasonably in advocating to the petitioner that the plea offer was a good one. The court appropriately canvassed the petitioner to ensure that his pleas were voluntary, and there is nothing in the record to suggest that DeCaprio coaxed the petitioner's mother to pressure him into pleading guilty.

[4] On appeal, the petitioner claims that DeCaprio failed (1) to investigate adequately the shooting of Tripp, (2) to provide the petitioner with police reports and other materials, (3) to locate and to subpoena Bozeman, (4) to prepare the petitioner's criminal witness tampering case adequately and (5) to allow the petitioner to make a voluntary decision about whether to plead guilty by enlisting the petitioner's mother to pressure him.

[5] The petitioner did not attempt to call Bozeman as a witness at the habeas trial.

The facts found by the habeas court were not clearly erroneous, and the petitioner failed to satisfy his burden that his attorney's performance was ineffective. See *Mock* v. *Commissioner of Correction*, supra, 115 Conn. App. 103–104.

Because the petitioner has failed to satisfy the first prong of the *Strickland* test for ineffective assistance of counsel, we need not analyze whether counsel's performance unfairly prejudiced the petitioner.[6] We conclude that the court properly denied the petitioner's petition for a writ of habeas corpus.[7]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] Despite this, the habeas court determined that the petitioner's claim also failed to satisfy the prejudice prong of the *Strickland* test. See *Strickland* v. *Washington*, supra, 466 U.S. 687.

[7] Although it was not discussed in either party's brief, the issue of procedural default, addressed in the court's memorandum of decision, arose on appeal during oral argument. We do not reach this issue.