**IN THE COURT OF APPEALS OF IOWA**

No. 22-1273
Filed April 26, 2023

**STATE OF IOWA,**
　　　Plaintiff-Appellee,

**vs.**

**BRIAN THOMAS WOODS,**
　　　Defendant-Appellant.
_____

　　　Appeal from the Iowa District Court for Dubuque County, Mark T. Hostager,

District Associate Judge.


　　　A defendant appeals his sentence for reckless use of fire.  **AFFIRMED.**


　　　Martha J. Lucey, State Appellate Defender, and Robert P. Ranschau (until

withdrawal) and Bradley M. Bender, Assistant Appellate Defenders, for appellant.

　　　Brenna Bird, Attorney General, and Thomas J. Ogden, Assistant Attorney

General, for appellee.


　　　Considered by Tabor, P.J., and Schumacher and Ahlers, JJ.

**TABOR, Presiding Judge.**

Originally charged with arson, Brian Woods entered an *Alford* plea[1] to reckless use of fire. In turn, the State recommended that Woods receive a sentence of time-served. But the district court sentenced Woods to 360 days in jail with all but ninety days suspended, plus two years of unsupervised probation. Woods appeals.[2] He argues that the court should have imposed the State's recommended sentence. And that by failing to do so, the court abused its discretion. Finding no abuse of discretion, we affirm.

On Christmas Eve 2021, police and firefighters responded to a house fire on the north side of Dubuque. Flames were coming from a room that Woods rented from homeowner Susan Alexander. It was not the first call about that residence that night. Earlier, police received reports that Woods was there having a mental-health emergency. After their investigation, police believed that Woods intentionally started the fire in his bedroom "by pouring gasoline on the floor." The State charged him with second-degree arson, a class "C" felony, under Iowa Code section 712.3 (2021).

---

[1] "An *Alford* plea is a variation of a guilty plea." *State v. Burgess*, 639 N.W.2d 564, 567 (Iowa 2001). Under the practice approved in *North Carolina v. Alford*, 400 U.S. 25, 37 (1970), Woods did not admit to starting the house on fire but pleaded guilty because the evidence "strongly negate[d]" his claim of innocence. *See State v. Knight*, 701 N.W.2d 83, 85 (Iowa 2005) (citation omitted).

[2] Woods argues that we have jurisdiction despite his attorney's untimely notice of appeal. *See* Iowa R. App. P. 6.101(1)(b). "Failure to appeal on time is a jurisdictional defect." *Jensen v. State*, 312 N.W.2d 581, 582 (Iowa 1981). And appellate courts have the inherent power to decide whether they have subject matter jurisdiction over an appeal. *State v. Davis*, 969 N.W.2d 783, 785 (Iowa 2022). Woods notes that despite his attorney's delay, he filed a timely pro se notice of appeal. He asserts this shows he timely expressed "a good faith intent to appeal before the deadline." The State does not contest timeliness. We agree that Woods is entitled to a delayed appeal. *See id.* at 788.

At first, Woods pleaded not guilty. And he gave notice of insanity and diminished-capacity defenses. But later, he agreed to enter an *Alford* plea to reckless use of fire, a serious misdemeanor. *See* Iowa Code § 712.5. In doing so, Woods admitted that the State "could prove to a jury that [he] recklessly used fire or any incendiary device or materials as to recklessly endanger the property of another." In exchange, the State agreed to recommend he be sentenced to time served in jail. The parties originally conditioned the agreement on the court being bound to follow that recommendation. *See* Iowa R. Crim P. 2.10(2).

But at the plea hearing, the court declined to accept the plea with a binding recommendation. *See* Iowa R. Crim. P. 2.10(4). The court asked whether Woods wanted "to go through with the plea on a nonbinding basis." Woods confirmed he did—even after the court cautioned that it "could sentence [him] to something different than" the State's recommendation "all the way up to the maximums." The court also told him the maximum punishment for a serious misdemeanor is up to a year in jail and a $2560 fine. After Woods entered his plea, the court ordered a presentence investigation (PSI) report.

According to that report, forty-three-year-old Woods had an adult criminal history dating back to 1997. Many of his convictions involved substance abuse. Woods told the PSI reporter that he first tried marijuana, cocaine, and methamphetamine when he was fifteen years old. And he had a history of mental-health issues, including diagnoses for bipolar and anti-social personality disorders. The PSI recommended the district court sentence Woods to 360 days in jail.

Woods called Alexander, his landlady, to testify at his sentencing hearing. She had known Woods for twenty years and was his mother's best friend. She

told the court that she believed Woods "did not do it on purpose." She lobbied for leniency: "I don't want to see him punished . . . . [N]ot because of the fire. Absolutely not. You know, there's other problems that rehabilitation would help him with that he desperately is seeking." She explained his "other problems" included drug abuse. And she relayed his recent experience: "[H]e went to the hospital to seek help and got screwed over that and thrown in jail."[3] Finally, she reiterated that she did not want Woods to do jail time because of the fire at her home.

Following her testimony, the State asked the court to follow the plea agreement. Woods's attorney agreed: "[A]s we all know, jail is just dead time. There's no rehabilitative efforts there. . . . [W]e would urge the court to impose any kind of probation that requires him to get serious about his treatment."

The district court said that it had considered the circumstances of the case, Woods's age, his adult criminal history, and the plea agreement. Based on these considerations, the court told Woods that it would not follow that agreement.

> I don't see how that plea bargain which is time served, whatever that is, and no probation, no other conditions—I don't see how that advances the sentencing goals of protection of the community and rehabilitation of you. All right? And so I'm not going to follow that plea bargain.

---

[3] This statement may be referencing Woods's two parole violations that June. Woods tested positive for marijuana, benzodiazepines, methamphetamine, amphetamine, and opioids during a random drug test. A few days later, he went to a local hospital seeking treatment after using methamphetamine. Once admitted, staff discovered Woods was armed with a knife and called police. The State charged him with possessing a dangerous weapon while under the influence, interfering with official acts, and being under the influence in public.

Highlighting the PSI report, Alexander's testimony, and the attorneys' arguments, the court imposed the minimum fine and sentenced Woods to 360 days in jail, suspended 270 days, and placed Woods on two years of informal probation. While on probation, Woods had to "obtain either a new or an updated substance abuse evaluation" and follow through with any treatment recommendations.

Woods now appeals, claiming the district court's deviation from the State's recommended sentence was an abuse of discretion.[4] In contesting his sentence, Woods insists: "As the case was progressing, the prosecutor must have realized that the defendant was overcharged and decided to drop the charge from a class 'C' felony to a serious misdemeanor."

We reject Woods's claim. Under our rules of criminal procedure, a district court may reject a plea agreement that purports to be binding. *State v. Wenzel*, 306 N.W.2d 769, 771 (Iowa 1981) (discussing what is now rule 2.10). Following that rule, after rejecting the agreement, the court gave Woods a chance to withdraw his plea and warned that his sentence could be "up to the maximums." *See* Iowa R. Crim. P. 2.10(4). Still, Woods decided to go forward with his misdemeanor plea. The court then properly weighed the relevant sentencing factors, including Woods's long criminal history and his "instances of unsuccessful probation." The court's decision was neither unreasonable nor based on untenable grounds. *See Formaro*, 638 N.W.2d at 725. So we will not disturb it.

**AFFIRMED.**

---

[4] We review the sentencing order for the correction of legal error. *See State v. Damme*, 944 N.W.2d 98, 103 (Iowa 2020). We will reverse if the prison term reveals an abuse of discretion or arises from a defect in the sentencing procedure. *Id.* (citing *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002)).